Keller et ux. *v.* Keystone Furniture Company, Appellant.

Argued April 20, 1938.

Before KELLER, P. J. CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*Rufus S. Marriner,* with him *John F. Wiley,* of *Marriner & Wiley,* for appellant.

*Wray G. Zelt, Jr.,* of *Hughes, McAlister & Zelt,* with him *Nicholas Polkabla,* of *Polkabla & Whitsett,* for appellee.

OPINION BY CUNNINGHAM, J., September 28, 1938:
On September 27, 1935, Charles G. Keller requested

Miss Elizabeth Kreger to drive his wife, Ola Keller, in his Terraplane Coach from his residence in Monessen to Pittsburgh on a shopping trip.

As they were returning to Monessen, through Washington County on Route 88, about 2:15 o'clock in the afternoon the automobile, with Miss Kreger at the wheel, collided with the rear of defendant's truck which was being driven in the same direction as the Keller car, along a straight level portion of the highway, resulting in damage to the Keller automobile and severe personal injuries to Mrs. Keller. The highway had a macadam surface with a berm on each side.

Plaintiffs instituted the present action of trespass, Charles G. Keller to recover for damage to his car, medical expenses and loss of consortium resulting from the injuries to his wife, and Ola Keller to recover damages for her personal injuries. The evidence on behalf of the plaintiffs showed that Miss Kreger overtook and attempted to pass defendant's truck on its left side, but, seeing a car coming in the opposite direction, turned her car to the right to get back into the lane of traffic behind defendant's truck, which, at practically the same moment and without warning, came to a sudden stop. By reason of the angle at which the automobile was proceeding its right front crashed into and under the left rear of the truck. The radiator and hood of the Keller car were pushed under the rear of the left side of the truck, breaking the windshield on the right side of the car and injuring Mrs. Keller who was riding in the front seat to the right of the driver. Miss Kreger, while under cross-examination, gave the following description of the accident: "Q. Now, let's see if we can't do it this way then. You started to pull out to pass the truck? A. I started to pull out to see if I could pass the truck. Q. Well, how far did you get out? A. Enough that Mrs. Keller could see. Q. Then clear over on the left

side? A. No, not clear over. Q. You weren't clear over on the left side? A. No, sir. Q. Well, you didn't get up to the left side of the truck at all, only you pulled out on the road? A. Yes, sir, that is right. Q. I am just getting the location of your car. You were back of the truck when you started to do that how far, the same distance, about 30 feet? A. Yes, sir. Q. Then you kept about that same distance from this truck when you pulled out, and when you pulled back, didn't you, you would be about the same distance from it? A. Well, the truck—Yes, it would be the same distance. Q. About the same. How far over to the left of the middle line of the road, we will say, did you bring your car to see whether there was anything coming? How much over the left center of the road did you pull your car? You wouldn't have to go far to see, would you? A. No, sir, I didn't turn out very far. Q. You didn't turn out very far? A. Enough that Mrs. Keller could see and she was sitting on the other side. Q. Then you turned your car over towards the left center of the road or to the center of the road? A. Yes, sir. Q. And you didn't move it up to the side of the truck at all? A. No, sir. Q. And just as soon as you pulled the front over to the left of the way you were traveling, you observed a car coming? A. Yes, sir. Q. And then you turned your car back? A. Yes, sir. Q. And all the time you were doing that you were about 30 feet of the rear of the truck? A. Yes, sir. Q. Then when you turned back, the truck stopped in front of you? A. Yes, sir. Q. And you kept on going until a portion of your car at least went under the truck bed A. As soon as I turned in the truck stopped. Q. Well, we passed that point; I thought you did tell me that. When you turned back on the right side of the road to get back in line, when you turned back, the truck stopped? A. Yes, sir. Q. And then you moved on to the truck going under the left side of

the truck? ...... How much or what part of your car went under the truck? A. I would say from where the left fender starts in the center, from there on the whole part of the car to the right side. Q. It is your right fender that went under, isn't it? A. Yes, my right fender went under the truck. Q. And the right portion of the top of your car went under the truck too, didn't it? A. Yes, sir, the hood. Q. And that part of your car went under the truck the length of the hood, didn't it? A. I would say— Q. It came back close to the windshield, didn't it? A. Yes, sir. Q. When you turned your car out to look, it never got straight on the road, it was on an angle so that you and Mrs. Keller were looking up the road? A. Yes, sir. Q. And then you straightened it back of the truck? A. I didn't get time to straighten it when he stopped. ...... Q. And of course you couldn't get your car stopped until it went under the truck? A. It hit the truck. Q. Well, didn't you do anything to try to stop it? A. I put on the brakes. ...... Q. Well, you didn't see any signal of any kind, did you? A. No, sir. Q. You didn't have a chance to look for one, did you? You didn't have a chance to look for a signal? A. I didn't see any. ...... Q. Did you see it coming to a stop when you noticed it was stopped? A. It just stopped in front of me."

The learned trial judge, BROWNSON, P. J., submitted all the issues arising under the testimony to the jury in his usual clear, adequate and impartial, manner. Counsel for both sides declined the invitation extended them at the conclusion of the charge for any "suggestions," and the defendant took only a general exception.

It was not questioned at the trial that Charles G. Keller had "engaged or secured" Miss Kreger to drive Mrs. Keller to and from Pittsburgh, thereby making Miss Kreger as fully his agent in the operation of his

car as the driver of the truck was the agent of the defendant.

The issues raised by the testimony were clearly defined and the rights of the defendant under each fully protected in the following excerpt from the summary of the charge: "Now, you will carefully consider all the evidence in the case. First, the question for determination is whether it is shown by the preponderance of the evidence that the truck driver was guilty of negligence which operated to cause this collision and injury. And, as I said before, if you find that that is not established by the preponderance of the evidence, then you render a general verdict for the defendant. If you find that that is established by the preponderance of the evidence, then you consider whether the evidence shows that Miss Kreger helped to cause the occurrence of the accident by improper management and control of the car she was driving and whether or not Mrs. Keller was guilty personally of any negligence in not taking proper care for her own safety in view of what was visible to her and known by her at the time. If you find that Miss Kreger was guilty of negligence which helped to cause the accident, then you return a verdict for the defendant so far as Mr. Keller is concerned, even if you find the truck driver was guilty of negligence which operated as a cause of the accident. And likewise, if you should find that Mrs. Keller was guilty of any neglect, which helped to bring the accident about, you would return a verdict for the defendant as against her, even if the truck driver was negligent."

The verdict was a responsive one; it reads: "[We] find Chas. G. Keller, plaintiff, and Keystone Furniture Co., a corporation, defendant, both guilty of negligence. Finding no contributory negligence on the part of Ola Keller, plaintiff, we award her damages in the amount

of Twenty-Five Hundred ($2,500) Dollars. And as to Charles G. Keller we find for the defendant."

Defendant's motions for judgment in its favor, n. o. v., or a new trial having been denied in an opinion written for the court below, in banc, by the trial judge, it has now appealed from the judgment entered in favor of Ola Keller upon the verdict.

The only errors assigned are to the refusal of its point for binding instructions and the subsequent denial of its motion for judgment in its favor upon the whole record. As the record stands in this court the contributory negligence of Miss Kreger, as found by the jury, is not directly involved upon this appeal.

Appellant raises three questions for our consideration: (1) Was there any evidence of negligence upon the part of the driver of appellant's truck; (2) Was the negligence of Miss Kreger imputable to her guest passenger, Mrs. Keller; and (3) Was Mrs. Keller herself guilty of negligence by reason of anything she did or failed to do in connection with the operation of the car in which she was injured?

1. The negligence charged against appellant was the sudden stopping of its truck upon a public highway without regard to the effect upon following vehicles, and particularly the negligence of its driver "in failing and neglecting to warn the said Elizabeth Kreger of his intention to stop the truck." Section 1012 of Article X of the Motor Vehicle Code of May 1, 1929, P. L. 905, as amended by the Act of June 29, 1937, P. L. 2329, Sec. 3, (75 PS §571) provides: "The driver of any vehicle upon a highway, before starting, stopping or turning from a direct line, shall first see that such movement can be made in safety, and, if any pedestrian may be affected by such movement, shall give a clearly audible signal by sounding the horn, and whenever the *operation of any other vehicle following may be affected* by such movement, shall give a signal, as required in

this section, plainly visible to the driver of such other vehicle, of the intention to make such movement." (Italics supplied) This is a legislative declaration that a driver may be negligent when he makes a sudden stop on the highway without proper warning to those behind. We have quoted the testimony of Miss Kreger describing the suddenness of the stop. Both she and Mrs. Keller testified no signal of any kind was given by the driver of the truck indicating in any manner his intention to stop.

Appellant's driver, Milton Lindner, contradicted them and testified stop signals were given, both by a direction light indicator commonly used on trucks, and by the ordinary stop light operating through the foot brakes. For present purposes, we must reject this evidence and accept appellee's and Miss Kreger's to the effect that no signals were given: *Jamison v. Kamerer*, 313 Pa. 1, 169 A. 231.

Appellant's main argument on this point is that no signal by its driver was necessary as both Miss Kreger and Mrs. Keller were looking at the truck and "saw it stopping" ahead of them. But their testimony, when viewed in the light most favorable to appellee, does not show they were aware for any appreciable period of time that appellant's truck was about to stop upon the highway. Appellee is entitled to the inference that the truck stopped suddenly and without warning just as Miss Kreger pulled in behind it to avoid the oncoming car. Even though Miss Kreger may have been aware that the truck was slackening its speed, she had a right to assume it would not suddenly come to a full stop without warning.

We think there was sufficient evidence of negligence upon the part of the driver of appellant's truck to justify submission of that question to the jury.

2. In our opinion, the negligence of Miss Kreger in operating the Keller car cannot, as a matter of law,

be imputed to her passenger, Mrs. Keller. The fact that the latter's husband owned the car and that Miss Kreger was driving it at his request did not make her the agent of Mrs. Keller, or establish, as a matter of law, Mrs. Keller's right to share in the control of the vehicle, under the rule announced by our Supreme Court in *Rodgers v. Saxton*, 305 Pa. 479, 158 A. 166, and *Mork et ux. v. Caslov*, 327 Pa. 298, 192 A. 903. Even where a wife owns the car and is sitting on the front seat alongside her husband who is driving, it has been held that the question of the wife's control over the driver and the consequent imputability of the driver's negligence to her were jury questions: *Watkins v. Overland Motor Freight Co.*, 325 Pa. 312, 188 A. 848.

Nor does the fact that both women were on a shopping trip establish such control by Mrs. Keller of the driver as would make the driver's negligence hers. As stated in *Rodgers v. Saxton*, supra, at page 488: "The negligence of the driver of a vehicle can be imputed to a passenger therein only when the evidence justifies a finding of the passenger's right to a share in the control of that vehicle at the time of the negligence. This is the test of such imputability whether the driver and the passenger were engaged at the time in a 'joint enterprise' or not." To the same effect see *McDougall v. Schaab et al.*, 117 Pa. Superior Ct. 285, 178 A. 168, where we held that the fact the driver and passenger had a common employer did not show the passenger's control of the operation of the car, citing *Rodgers v. Saxton*, supra. See also *Ward v. P. R. T. Co.*, 117 Pa. Superior Ct. 120, 177 A. 485.

Counsel for appellant, on cross-examination of Mrs. Keller, had her admit she was watching the road and observing traffic and doing what she could to assist in the operation of the car at the time of the accident. Appellant now argues the record shows Mrs. Keller took part in the operation of the car. It is clear, how-

ever, from a reading of all Mrs. Keller said on this point that she took no active part in the operation of the car, other than to look ahead and around as any passenger especially one sitting on the front seat, would ordinarily do. In *Janeway et al. v. Lafferty Bros.*, 323 Pa. 324, 329, 185 A. 827, where recovery was had, the wife plaintiff was seated beside her husband, the driver, when their car crashed into the rear of a truck standing on the highway early one misty, foggy, icy morning. It was there said: "The fact that she aided in the guidance of the car by watching for obstacles does not necessarily mean that she had a part in the control and operation of the vehicle, so that it was subject to their common command." We think the evidence indicates that Mrs. Keller took no such active part in the control of the car at the time of the accident as would make her status other than that of a guest passenger.

3. It is asserted by appellant that Mrs. Keller was herself guilty of negligence because she, as a guest passenger, knowing the truck ahead was about to stop, failed to warn the driver or remonstrate with her about the manner of her driving.

In this state it has long been settled that, "Where there are dangers reasonably manifest and known to the guest, and he has an opportunity to influence the situation for safety, if he sits by without warning the driver, and permits himself to be driven carelessly to his injury, or if he joins with the driver in testing danger, this is negligence which will bar recovery by him [citing cases]": *Landy v. Rosenstein et al.*, 325 Pa. 209, 188 A. 855, at page 214. See, to the same effect, in addition to the cases cited in *Landy v. Rosenstein*, supra, for this proposition, the following: *Kilpatrick v. P. R. T. Co.*, 290 Pa. 288, 294, 138 A. 830; *Campagna v. Lyles*, 298 Pa. 352, 357, 148 A. 527.

A guest passenger, however, is not bound to exercise

the same degree of care as the driver of the car: *Davis et ux. v. American Ice Co.*, 285 Pa. 177, 185, 131 A. 720; *Alio et al. v. Penna. R. R. Co.*, 312 Pa. 453, 457, 167 A. 326, and cases there cited; *Fingeret v. Mann*, 319 Pa. 262, 178 A. 674; *Landy v. Rosenstein*, supra, at page 215; *Delling et ux. v. McKnight*, 325 Pa. 251, 188 A. 859. In the Landy case the Supreme Court stated (p. 214): "We have decided that a guest is *not bound to act* except in case of a danger actually known to him, or so obvious that he is presumed to know it, and not then if the driver. is aware of the same and striving to avoid it: *Kilpatrick v. Phila. Rapid Trans. Co.*, 290 Pa. 288, 296. See also *Minnich v. Easton Transit Co.*, supra, [267 Pa. 200]; *Schlossstein v. Bernstein*, supra, [293 Pa. 245, 250]."

Nothing in the record shows that Mrs. Keller knew appellant's truck was about to make a sudden stop. Giving her the benefit of the inferences to which she is entitled, the turning of the car in which she was riding back into its proper lane of traffic and the sudden stop by the truck were practically instantaneous, occurring within a few seconds. Certainly, it cannot be held as a matter of law that she had an adequate and proper opportunity to control or influence the situation for safety. What was said in *Ferrell v. Solski*, 278 Pa. 565, 123 A. 493, where the car in which the deceased passenger was riding on the rear seat turned over, before the driver had an opportunity to control it, after striking a depression in the roadway, applies here. Speaking for the court in that case, Mr. Justice SADLER said (p. 570): "The accident occurred from inability to quickly straighten the car, after the depression was encountered. No effective protest could then have been made by him, (the passenger) and it cannot, therefore, be fairly said the deceased invited the harm by not giving some warning to the driver. At

least this was a question for the jury, under the circumstances, and it found for plaintiff."

Similarly, in *Becker v. Saylor*, 317 Pa. 573, 177 A. 804, plaintiff's husband, a guest passenger, was killed when the driver of the car jerked it suddenly off the road to avoid striking a car parked thereon at night without lights. Mr. Justice SCHAFFER stated (p. 575): "Appellant advances the proposition that plaintiff's husband was contributorily negligent because he did not protest against the manner in which defendant was driving. He had no time to protest, no opportunity to know the threatened danger or to give warning: Cf. *Frank v. Markley*, 315 Pa. 257."

Mr. Justice KEPHART (now Chief Justice) remarked at page 294, in *Kilpatrick v. P. R. T. Co.*, supra, a case in which at the time of the accident the guest passenger was reading a newspaper and consequently did not see defendant's trolley car approaching the intersection: "The extent to which one riding as an invited guest in an automobile should anticipate an impending peril and act in relation thereto depends on the facts of each case *(Nutt v. Penna. R. R. Co.*, supra, [281 Pa. 372]) and is ordinarily a question for the jury: [citing numerous cases]. It is only where the evidence is clear that the court should say, as a matter of law, that the guest was negligent: *Beck v. Director General*, supra, [268 Pa. 571]; *Minnich v. Easton Tr. Co.*, supra, [267 Pa. 200]." To the same effect see *Cormican v. Menke*, 306 Pa. 156, 159 A. 36.

Upon this branch of the case we adopt this paragraph from the opinion of the court below supporting its denial of appellant's motion for judgment n. o. v.: "Mrs. Keller made no protest at the time, and took no action. But the jury could find, and evidently did find, that Mrs. Keller had no time and opportunity to do anything to influence the situation; that after Miss Kreger attempted to dart back, at an undue rate of

speed, behind a truck that was only 30 feet ahead of her, the collision came so quickly that Mrs. Keller could have done nothing to prevent it. We think the question whether by any failure of duty on her part she participated in bringing about the collision, was properly submitted to the jury."

This case was well and fairly tried below and ably argued here. We think each of the issues arising out of the evidence was for the jury; their discriminating verdict indicates they understood and intelligently disposed of the respective contentions of the parties.

Judgment affirmed.