**KOCHER v. CRESTON TRANSFER CO. et al.**

No. 9433.

Circuit Court of Appeals, Third Circuit.

Argued Dec. 4, 1947.

Decided March 1, 1948.

As Amended March 3, 1948.

A. Evans Kephart of Philadelphia, Pa., (Hogan & Scott, of Easton, Pa., and Kephart & Kephart, of Philadelphia Pa., on the brief), for Isabella M. Kocher.

Henry S. Ambler, of Philadelphia, Pa. (Frank R. Ambler, of Philadelphia, Pa., on the brief), for J. Fishman & Son, Inc., and Adolph Rozier.

Ward C. Henry, of Philadelphia, Pa. (Robert A. Detweiler and George H. Detweiler, both of Philadelphia, Pa., on the brief), for Creston Transfer Co. and Joseph A. Lalime.

Before BIGGS, MARIS, and KALODNER, Circuit Judges.

KALODNER, Circuit Judge.

This is an appeal from a judgment entered on a verdict against the appellant in the court below, a motion for new trial having been denied. The proceedings were instituted by appellant as administratrix of the estate of her deceased husband, Fred W. Kocher, and on her own behalf and the behalf of their children under the laws of Pennsylvania. Appellant's decedent lost his life as a result of the accident in controversy, a collision on the Pennsylvania Turnpike approximately five miles from its Carlisle terminus at about 4:50 A.M. on December 17, 1943.

The issues presented on this appeal are whether the jury was properly instructed (1) with respect to the applicability to traffic on the Pennsylvania Turnpike of the "assured clear distance ahead" rule, and (2) with respect to the imputability of negligence to the appellant's decedent.

The record before us disclosed the following:

Two days before the accident, Frank Meglino had been dispatched with a truck-tractor and loaded trailer for Pittsburgh, Pennsylvania. His tractor broke down at Coatesville, Pennsylvania, and Kocher was assigned to take another truck-tractor, pick up Meglino and the loaded trailer, and proceed to Pittsburgh. Kocher drove the tractor to Coatesville where Meglino boarded it and, apparently, the trailer was attached. He then drove the tractor-trailer to a diner at Elizabethtown, Pennsylvania, about eighteen miles east of Harrisburg, Pennsylvania, and forty-two miles east of the scene of the accident. After eating, Meglino took the wheel, Kocher wanting to go to sleep. Kocher fell asleep at about Harrisburg and while he was still sleeping Meglino, proceeding west, collided with the rear of a tractor-trailer owned by the Creston Transfer Co., and driven by one Lalime, both of whom are appellees here.

The Creston vehicle had been towed onto the highway, just prior to the accident, by a truck owned by J. Fishman & Son, Inc., and driven by one Rozier, who are also appellees here. The Fishman and Creston vehicles, in that order headed west, were stopped altogether or partially on the highway at the time of the accident, the drivers being engaged in uncoupling the towing chains. Meglino accounted for the accident thus: He was traveling at a rate of thirty-five to forty miles per hour when he noticed the lights of an object about 100 to 200 feet ahead; he depressed his headlights as a signal of his intention to pass, but at that moment realized that there was an unlighted vehicle—the Creston tractor-trailer—between him and the lighted truck; it was then too late to avert the collision.

The remaining significant evidence insofar as this appeal is concerned, is the testimony of Meglino that both he and Kocher were in charge of the tractor-trailer, which was operated by their employer, Philadelphia Pittsburgh Carriers; that both were authorized to drive; that the trailer was originally assigned to him and the tractor was originally assigned to Kocher; and that both, would, by custom, sign the log at the end of the run.

The court below submitted eight interrogatories to the jury.[1] The jury concluded that Rozier, Lalime and Meglino were negligent; that the negligence of each was a substantial factor in bringing about the accident; and that Kocher had a right to share in the control of the vehicle while Meglino was driving.

It may be noted in passing that, since all the operative facts occurred in Pennsylvania, the law of that jurisdiction prevails. Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

Appellant's first point constitutes an attack upon the instructions to the jury that " * * * no person shall drive any vehicle upon a highway * * * at a greater speed than will permit him to bring the vehicle to a stop within the assured clear distance ahead." It is appellant's position that this rule, commonly spoken of as the "assured clear distance ahead" rule, is without application in the instant case because the accident occurred on the Pennsylvania Turnpike. The Pennsylvania Turnpike, it is argued, is a high speed highway especially designed to eliminate the usual roadway obstructions and is governed

[1] The interrogatories and the answers of the jury are as follows:

No. 1. Was any negligence on the part of Rozier a substantial factor in bringing about the accident? Answer, Yes.

No. 2. Was any negligence on the part of Lalime a substantial factor in bringing about the accident? Answer, Yes.

No. 3. Was Rozier, from the time he undertook to tow Lalime's truck, acting within the scope of his employment? Answer, Yes.

No. 4. Was any negligence on the part of Meglino a substantial factor in bringing about the accident? Answer, Yes.

No. 5. Were the body lights on the rear of the Creston truck on or off? Answer, We don't know.

No. 6. Did Meglino see the Creston truck ahead of him in time to be aware of the danger to him created by it so that he would have been able to guide his truck without accident? Answer, No.

No. 7. Did Kocher have a right to share in the control of the vehicle while Meglino was driving? Answer, Yes.

No. 8. Is your verdict for the plaintiff against any of the four defendants? Answer, No.

by the Regulations of the Turnpike Commission rather than those provisions of the Motor Vehicle Code enacting the "assured clear distance ahead" rule. 75 P.S. § 501.[2] Needless to say, the Turnpike Commission has not expressly adopted that rule in any of its Regulations.

■ We think it plain that both subsection (b) and subsection (c) of Section 501 are subject to the proscription in subsection (a) thereof. The exceptive provision in subsection (c) relates to the maximum speed limits "hereinafter provided" for the special classes of vehicles listed and raises the maximum speed limits for those vehicles by twenty miles per hour, preserving, however, the power in the Turnpike Commission "as hereinbefore provided" i.e., in subsection (b) (7), to fix lower maximum speed limits therefor.

■ The appellant's argument, in any case, must fail for another reason. The "assured clear distance ahead" rule is not merely a statutory obligation, but, apart therefrom, is an established principle of law of negligence in Pennsylvania. Thus, in Hutchinson v. Follmer Trucking Co., 1939, 333 Pa. 424, at page 427, 5 A.2d 182, at page 183, it was said:

"No principle of the law of negligence has been more frequently emphasized in recent decisions than that establishing the duty of the operator of a motor vehicle to maintain such control over it as to enable him to bring it to a stop within the range of its headlights—a mandate fixed and unchangeable, however much the visibility be impaired * * *."

And in a footnote to that statement, the Court said:

"It is *also* imbedded in the statutory law: Act of May 1, 1929, P.L.905, § 1002, and amendments." (Emphasis supplied.)

In Gaber v. Weinberg, 1936, 324 Pa. 385, at page 387, 188 A. 187, at page 188, cited in the Hutchinson case, the Court said:

"The rule is inflexible *both by statutory requirement and by the decisions of this court,* that the driver of a vehicle upon a highway must have it under such control as 'will permit him to bring the vehicle to a stop within the assured clear distance ahead.'" (Emphasis supplied.)

Indeed, it appears that the rule referred to was case law in Pennsylvania before the statute in controversy was enacted. Cf. Serfas v. Lehigh & N. E. R. Co., 1921, 270 Pa. 306, 113 A. 370, 14 A.L.R. 791.

Finally, although the Turnpike may be a relatively safer highway on which to drive,

---

[2] Act of May 1, 1929, P.L. 905, Sec. 1002, as amended, 75 P.S. § 501 reads as follows:

"Restrictions as to speed

"(a) Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed, not greater than nor less than is reasonable and proper, having due regard to the traffic surface, and width of the highway, and of any other restrictions or conditions then and there existing; and no person shall drive any vehicle, upon a highway at such a speed as to endanger the life, limb, or property of any person, nor at a speed greater than will permit him to bring the vehicle to a stop within the assured clear distance ahead.

"(b) Subject to the provisions of subsection (a) of this section, speeds in excess of the maximum limits hereinafter provided shall be unlawful:
*    *    *    *    *    *

"7. Seventy (70) miles an hour speed limit: All vehicles when being operated on highways under the supervision and control of a Turnpike Commission, ex-

cept those otherwise restricted by this act to lower maximum speeds, and except when restricted to lower maximum speeds by such Turnpike Commission upon the highways under its supervision and control or any zones or sections thereof where official signs erected by such Turnpike Commission on the highway facing the traffic to be controlled are displayed.

"(c) Subject to the provisions of subsections (a) and (b) of this section, it shall be unlawful for the following kinds, types, and classes of vehicles to be operated at a greater speed than *hereinafter* provided, *except* when such vehicles are being operated on highways under the supervision and control of a Turnpike Commission in which case subject to speed restrictions by such Turnpike Commission *as hereinbefore provided* the maximum speed limits shall be twenty miles per hour greater than hereinafter provided." (There follows specific maximum speed limits for specified types of commercial vehicles and buses.) (Emphasis supplied.)

the reason for the "assured clear distance ahead" rule persists, as the learned trial judge indicated, and we find nothing in the Pennsylvania decisions which intimates that it is not applicable under the conditions of the instant case. It follows, therefore, that the trial judge gave to the jury a proper principle of the law of negligence in Pennsylvania.

There remains for disposition the appellant's second point—the imputability of negligence.

On this score the appellant presses the exception, taken in the lower court, to the trial judge's charge with respect to "joint enterprise" and also asserts two additional grounds for reversal: (1) Failure to charge clearly on the issue of "control" and (2) failure to charge at all on the burden of proving imputability. No request was made by the appellant to charge on the question of burden of proof, nor was there an exception taken to the charge because of the omission.

Considering first the "joint enterprise" issue:

In accordance with a request of one of the appellees, the jury was told:

"The third point is a quotation from a Supreme Court decision which is correct: 'If two or more persons unite in the joint prosecution of a common purpose under such circumstances that each has authority, express or implied, to act for all in respect to the control of the means or agencies employed to execute such common purpose, the negligence of one in the management thereof will be imputed to all others.'

"That is in line with what I told you about imputing the negligence of Meglino to this dead man. On the other hand, you should remember this: The mere fact that these men are fellow servants of a common master and are both acting in the course of their master's business or employment *does not necessarily* make them participants in a joint enterprise so that the negligence of one would bar the other." (Emphasis supplied.)

The case referred to in the charge is Roschmann v. Sanborn, 1934, 315 Pa.188, 172 A. 657. Of that case it need only be said that its facts are so materially different from those in the present controversy that discussion of its application here is hardly warranted.

In Hoffman v. Pittsburgh & L. E. R. R., 1923, 278 Pa. 246, at page 248, 122 A. 274, at page 275, the Court said:

"Deceased was employed as driver of an ice wagon, and at the time of the accident was engaged in the performance of his duty in charge of a delivery wagon drawn by two horses. Another employee of the company, a helper in making delivery, was driving the team; both being engaged in the same work and carrying out a common purpose, the same measure of duty was imposed upon deceased and his helper."

Insofar as this quotation refers to "common purpose", it does not represent the law of Pennsylvania as it is today in view of Rodgers v. Saxton, 1931, 305 Pa. 479, 158 A. 166, 169, 80 A.L.R. 280. See Pennsylvania Annotations to the Restatement of the Law of Torts, Section 491. In the Rodgers case, the Supreme Court had this to say, 305 Pa. pages 486-488, 158 A.:

"The injection into judicial discussions of this class of cases of the phrases 'joint enterprise' and 'common purpose' has made not for clarity but for confusion, for at least two reasons: First, there is no standard of 'joint enterprise' or 'common-purpose' and no practicable method of determining what is such an enterprise and such a purpose. * * * Secondly, even though the fact should be established in a given case that the driver and the passenger of a vehicle were engaged in an admittedly joint enterprise at the time the driver was negligent, that fact alone would not tend to prove that the passenger had a right to share in the vehicle's control. * * *

"There is no legal distinction between the phrases 'joint enterprise' and 'the prosecution of a common purpose'. Anything that two or more persons are engaged in may with equal correctness be characterized by either phrase. If a driver of an automobile and a passenger in that automobile are 'prosecuting a common purpose' in motoring, the passenger may or may not have any right to a share in the control of that automobile. If such a right to share in a vehicle's control is alleged, it must be proved.

The proof may, as in other cases, be direct or circumstantial. There may be cases where it will clearly appear that driver and passenger are engaged in what obviously can be accepted as a 'joint enterprise', and this enterprise may be attended by such circumstances as upon proper submission may logically lead a jury to infer that the passenger had a right to share in the vehicle's control.

"It is only when the driver is the servant or agent of the passenger at the time of the the negligent act and that act is committed within the scope of the servant's or agent's employment, or when the driver and the passenger are business partners and the operation of the vehicle is in furtherance of the partnership business, that the negligence of the driver will from the mere relationship of the parties be imputable to the passenger. In all other cases the test is, Did the passenger have a right to a share in the control of the vehicle? Responsibility is commensurate with authority. * * *

"The negligence of the driver of a vehicle can be imputed to a passenger therein only when the evidence justifies a finding of the passenger's right to a share in the control of that vehicle at the time of the negligence. This is the test of such imputability whether the driver and the passenger were engaged at the time in a 'joint enterprise' or not."

Furthermore, Pennsylvania is in accord with the view expressed in Comment (d) to Section 491 of the Restatement of the Law of Torts:

"The fact that the plaintiff and the driver are fellow-servants of a common master and are both acting in the course of their master's employment and in furtherance of his business does not make them participants in a joint enterprise, and this is true irrespective of whether the vehicle is owned by the master, the fellow-servant driver or by the plaintiff himself." Maio v. Fahs, 1940, 339 Pa. 180, 187, 14 A.2d 105; McDougall v. Schaab, 1935, 117 Pa. Super. 285, 286, 288, 178 A. 168; Marmar v. Farrell, 1935, 116 Pa.Super. 586, 590, 177 A. 224.

■ Under these rules, by which we are bound, it clearly appears that a mere showing of a "joint enterprise," without more, is insufficient to impute the negligence of Meglino to Kocher. It is clear, also, that the existence of the coemployee status of Meglino and Kocher does not, in and of itself, justify the appellation "joint enterprise," nor involve them in a "joint prosecution for a common purpose." While a situation might be hypothesized in which fellow, servants of a common master acting within the scope of their employment engage in a "joint enterprise," that label is attached not because of, but in spite of, the fellow servant relationship. Granting that the jury determined the cause below in favor of appellees, the facts of this case in our opinion do not lend themselves to such a hypothetical situation. The charge, therefore, in this respect was unnecessary and in addition to inducing confusion, afforded an additional basis unwarranted on the record for the ultimate conclusion reached by the jury. Assuming, nevertheless, the applicability of the charge, then particularly noteworthy is the lack of any definition of the enigmatic terms "joint enterprise" and "joint prosecution for a common purpose." Lack of essential definition is reversible error.

■ Further, the statement of the court below to the jury that "The mere fact that these men are fellow servants * * * does not necessarily make them participants in a joint enterprise so that the negligence of one would bar the other" was erroneous not merely because, on the cases cited, the finding of a "joint enterprise" alone does not conclude the matter, but also because there was no evidence on which to base a finding of "joint enterprise" and, more especially, because it left to the jury to speculate upon the circumstances in which a fellow servant relationship would give rise to a "joint enterprise" or to the kind of authorization which was described in the quotation from the Roschmann case used by the court below in its charge.

■ Our opinion as to the uncertainty flowing from the quoted charge finds substantial support in the fact that the jury found it necessary to obtain further instructions on this phase of the controversy. We cannot assume, however, that the jury, upon receiving the subsequent instructions, obliterated from its mind the improper charge

since these instructions failed to correct the initial error.

For the reasons stated, it is our opinion that the appellant is entitled to a new trial. Because a new trial ensues, and for the guidance of the court below, we are constrained to comment further upon the record of this case in the light of the Pennsylvania decisions.

The evidence here on the issue of control was extremely limited. As already stated, no charge on the onus of proof of this issue was rendered although, as the learned trial judge pointed out in denying the motion for a new trial, there was neither a request for such a charge by the appellant nor an exception to the charge because of the omission. However, as indicated in the Rodgers case, that burden rests upon him who asserts it. Cf. Straus v. Rahn, 1935, 319 Pa. 93, 179 A. 445. We do believe that where the evidence is so slight, a charge on the burden of proof would materially alleviate much of the difficulty faced by the jury in reaching its decision.

In any event, we think the evidence here, on the score of control, did not rise to that level which warranted submission to the jury. It is undisputed that under the view presently prevailing in Pennsylvania, the ultimate test of the imputability of the negligence of a driver to another person in the same vehicle is whether the latter had a "right to share in the control of that vehicle at the time of the negligence." Valera v. Reading Co., 1944, 349 Pa. 123, 36 A.2d 644, 646; Rodgers v. Saxton, supra; Harris v. E. Oostdyk Motor Trans. Corp., 1941, 340 Pa. 478, 17 A.2d 347. We have so held in Stafford v. Roadway Transit Co., 1948, 165 F.2d 920.

Under the Pennsylvania decisions mere ownership of the vehicle, or, absent ownership, even the absolute right to control who could drive it, is not the test. The test is *who was in charge of the actual operation of the vehicle at the time of the accident.* Speier v. Ayling, 1946, 158 Pa.Super. 404, 406, 407, 45 A.2d 385; Watkins v. Overland Motor Freight Co., Inc., 1937, 325 Pa. 312, 316, 188 A.

848; Mork v. Caslov, 1937, 327 Pa. 298, 302, 192 A. 903. For example, the mere fact that the passenger aids the driver in the guidance of the vehicle does not necessarily mean that he has a part in its control and operation so that it is subject to their common command. Keller v. Keystone Furniture Co., 1938, 132 Pa.Super. 547, 556, 1 A.2d 562. In pragmatic language, the test is whether the other occupant in the vehicle has any right or authority to give orders or directions to the driver for the operation of the vehicle, or alternatively, whether the driver is under a duty to obey any directions which the passenger might attempt to give with respect to where the automobile should be driven, or in what manner it should be used or operated. Mork v. Caslov, supra. While it appears that authority to direct where to drive may be taken into consideration that authority alone is insufficient to resolve the controversy. Harris v. E. Oostdyke Motor Trans. Corp., supra.

Applying these principles to the facts in the instant case, the inadequacy of the evidence is presented in sharp relief. Where to go was a question settled for both Kocher and Meglino by their employer. The authority of Meglino to drive also came from that source. That Kocher determined to stop at Elizabethtown for refreshments simply indicated that he had control while he was driving: it affords no other inference. The testimony of Meglino concerning the change in drivers discloses only that it was done by consent of both, for Meglino testified that Kocher was sleepy, not that Kocher directed him to drive, and it was left open whether Meglino could have refused. But even if Kocher were solely responsible for the combined tractor-trailer he would then have been in no worse position than an owner. In Speier v. Ayling, supra, the court said, at page 406 of 158 Pa.Super., at page 387 of 45 A.2d:

"Ayling [Meglino] was the permissive driver of Speier [Kocher], who was seated beside the driver. While Speier [Kocher] could control who could drive it, the actual control of the vehicle was passed by him to Ayling [Meglino], and Speier

[Kocher] had no control of the driving of the vehicle at the time of the accident."

But the evidence does not even suggest that the custody of the combined tractor-trailer was solely in Kocher, for Meglino testified that they were both "in charge" because it was "my trailer" and "his tractor." The significance of this testimony exists in the disclosure that the responsibility of each was an even plane; alone, it does not establish that either was subject to the control of the other while driving. Cf. Melville v. State of Maryland, to Use of Morris, 4 Cir. 1946, 155 F.2d 440, 443, and see the cases cited therein —persuasive here because the law of the jurisdiction applied is consistent with that of Pennsylvania. But if the inference from this morsel of evidence be alternate, that is, that either had the right of control over the other or that neither had such right while the other was driving, then absent other evidence to tip the scales of balance the burden of proof rule necessarily would resolve the issue against the appellees.

 Finally, there was not a scintilla of evidence that Kocher at any time, let alone the time of the negligence, which is crucial, actually exercised any control over the operation of the vehicle other than while he himself was in the driver's seat. Indeed, it was an incontrovertible physical fact that he could not, for he was asleep. See Stafford v. Roadway Transit Co., supra, wherein we said [1948, 165 F.2d 922]:

"While Stafford and Barringer were engaged in a joint enterprise, a common outing for pleasure, there was ample support for the trial judge's finding that Stafford had turned the entire control of the car over to Barringer as his permissive driver and had no right to share in the control of the car at the time of the accident. *Indeed, being asleep, it would have been impossible for him to exercise such control.*" 165 F.2d 922. (Emphasis supplied.)

Consequently, the jury could not have but speculated on whether Kocher had the requisite right of control, and it could not reasonably have found that he exercised any such right. Accordingly, "* * * where the facts are not in dispute and the evidence is direct and certain, presenting no question of credibility and leaving no sufficient ground for inconsistent inferences of fact. * * *" there exists nothing for the jury function. Joseph v. United Workers Ass'n, 1942, 343 Pa. 636, 639, 23 A.2d 470, 472.

The judgment and order of the court below will be reversed and the cause remanded with directions to grant a new trial.