52 So.2d 702

### JOHNSON v. BATTLES.
6 Div. 123.

Supreme Court of Alabama.
March 1, 1951.

Rehearing Denied May 24, 1951.

McQueen & McQueen and Jas. E. Morrisette, all of Tuscaloosa, for appellant.

Davis & Zeanah, Tuscaloosa, for appellee.

LAWSON, Justice.

This is a suit brought by Mrs. Mae Battles, as administratrix, under the homicide statute, § 123, Title 7, Code 1940, against Thomas Lawrence Johnson for the unlawful death of her husband, George Battles.

The case was submitted to the jury on one count charging simple negligence, and the plea of the general issue in short by consent in the usual form. There was jury verdict for plaintiff. Judgment was in accord with the verdict. Defendant's motion for new trial was overruled and he has appealed to this court.

Reversal of the judgment appealed from is sought on three grounds: (1) that the trial court erred in sustaining plaintiff's objection to certain questions propounded plaintiff's witness Tucker by the defendant on cross-examination; (2) the refusal of the trial court to give the general affirmative charge with hypothesis as requested by the defendant; (3) failure of the trial court to grant defendant a new trial on the ground that the verdict was against the great weight of the evidence.

On cross-examination of Highway Patrolman Tucker, who was called as a witness for the plaintiff, the trial court sustained plaintiff's objections to the following questions:

"Q. Mr. Tucker, you said that you measured skidmarks back up the road from the intersection of seventy-two feet, and I believe you said you had been investigating automobile accidents for five years. From your experience in investigating automobile accidents and other training with the Highway Department, are you able to form an opinion as to the speed of an automobile as indicated by skidmarks?

\* \* \* \* \* \*

"Q. Mr. Tucker, in your opinion, skidmarks as you saw there and measured, with the type of automobile Mr. Johnson was driving, on a highway of that kind, going down hill, going down a grade, would skidmarks of seventy-two feet indicate to you that the Johnson car was traveling at an excessive rate of speed?

\* \* \* \* \* \*

"Q. Mr. Tucker, from your experience can you form an opinion from skidmarks on highways such as you observed at the scene of this collision at what speed an automobile making those skidmarks was traveling?"

Assuming that one shown to be an expert may express an opinion as to the estimated speed of an automobile, predicated on the distance the tires "skidded" or were dragged along the pavement, Jackson v. Vaughn, 204 Ala. 543, 86 So. 469; 70 A.L.R. 544; 156 A.L.R. 383, reversible error does not appear in connection with the trial court's action in sustaining plaintiff's objections to the questions heretofore set out. It is well established that the inquiry as to the competency of a witness to testify as an expert is addressed to the sound discretion of the trial court, whose decision on the evidence will not be disturbed on appeal except for palpable abuse. Kirby v. Brooks, 215 Ala. 507, 111 So. 235; Southern Bitulithic Co. v. Perrine, 191 Ala. 411, 67 So. 601; Neyman v. Alabama Great Southern R. Co., 174 Ala. 613, 57 So. 435. We are not willing to say that it is made to appear clearly that there was any abuse of discretion on the part of the trial court when the only evidence as to the witness' qualification to testify as an expert was that he had been a member of the Highway Patrol for five and a half years, during which time he had investigated many automobile accidents.

The defendant was not entitled to the affirmative charge on the ground that there was not sufficient evidence to go to the

jury to show that the death of plaintiff's intestate resulted from injuries received in the automobile collision.

Plaintiff's intestate was injured in an automobile collision which occurred on the highway leading from Tuscaloosa to Birmingham on the afternoon of September 11, 1948, when the 1937 Dodge automobile in which intestate was riding as a passenger collided with an automobile owned and being driven by defendant. Plaintiff's intestate died on March 12, 1949, approximately six months after the accident. The evidence shows that intestate was well and strong prior to the accident and that he was confined to his bed from the time of the accident to the date of his death. The only evidence showing that intestate's death resulted from injury received in the automobile collision was a copy of a death certificate certified by the State Registrar of the Bureau of Vital Statistics of the Alabama Department of Public Health, which was properly certified by the designated bureau clerk. The certificate of death sufficiently shows that the plaintiff's intestate died from uremic poisoning resulting from a fractured pelvis received in an automobile accident.

This information is required to be set out in the certificate of death under the provisions of § 25, Title 22, Code 1940. In pertinent part said section provides: "* * * The medical certificate shall be made and signed by the physician, if any, last in attendance on the deceased, who shall specify the time in attendance, the time he last saw the deceased alive, and the hour of the day at which death occurred. He shall further state the cause of death, so as to show the course of the disease or sequence of causes resulting in the death, giving first the name of the disease causing death (primary cause) and the contributory (secondary) cause, if any, and the duration of each. * * * Causes of death which may be the result of either disease or violence shall be carefully defined; and if from violence, the means of injury shall be stated, and whether (probably) accidental, suicidal or homicidal. * * * *"

Section 42, Title 22, Code 1940, provides in part as follows: "* * * Any such copy of the record of a birth or death, when properly certified by the state registrar, shall be prima facie evidence in all courts and places of the facts therein stated."

We think that the certificate of death, duly certified, when taken in connection with the evidence tending to show the condition of plaintiff's intestate prior to the accident and subsequent thereto, is sufficient to make out a prima facie showing that intestate's death resulted from injuries received in the highway accident which occurred on September 11, 1948. It then became the duty of defendant to overcome or rebut the presumption made by the certificate of death. American Life Ins. Co. v. Williams, 234 Ala. 469, 175 So. 554, 112 A.L.R. 1215, and cases cited.

On September 11, 1948, the date on which the accident on which this suit is based occurred, one Jack Dailey and Abram Kizziah were at the home of George Battles, plaintiff's intestate. Battles requested Dailey, who owned an automobile, to drive him to the home of one Jack Martin. Dailey told Battles that he didn't feel like driving, but that they could go in Dailey's car if Kizziah would drive. The three of them left Battles' home, with Kizziah driving the car, Battles riding on the front seat to the right of the driver, and the owner of the car, Jack Dailey, riding on the back seat.

They reached the Tuscaloosa-Birmingham highway which, for present purposes, we will treat as running north and south, and had proceeded in a northly direction approximately a mile and a half on that highway when the accident occurred. Jack Martin, to whose home they were driving, lived west of the highway.

The collision occurred at a point a short distance south of the road into which Kizziah intended to turn and drive in a westerly direction to get to the home of Martin

The defendant, Johnson, at the time of the collision, was proceeding in a southerly direction on the Tuscaloosa-Birmingham highway.

The testimony as to how the accident occurred is in sharp conflict.

The only witness who testified for the plaintiff as to the manner in which the collision occurred was the driver of the automobile, Kizziah. According to his testimony, he had stopped the automobile on the eastern side of the highway and held out his left hand preparatory to making a turn into the road which led to the home of Martin; that a car proceeding in a southerly direction turned from the western side of the highway in front of him and proceeded on down the shoulder on the east side of the highway; that shortly thereafter the car driven by the defendant followed the path of the first car until it reached the point where the car which Kizziah was driving was located, and the right side of Johnson's car hit the right side of the car driven by Kizziah and propelled it across the highway, where it stopped on the western side thereof, with the Johnson car ultimately coming to a stop on the eastern side of the highway. According to Kizziah, the defendant, Johnson, at the time of the collision was traveling at a speed estimated to be between seventy and seventy-five miles an hour. The place where the collision occurred was between 250 and 300 feet below the crest of a hill. The traffic was heavy, the day clear and the road dry.

The defendant, Johnson, testified that he came over the crest of the hill at a speed of approximately fifty miles an hour; that the car driven by Kizziah pulled out from behind a large truck and turned from the eastern side of the highway toward the western side as if to go onto the side road and turned directly in front of him; that he put on his brakes as soon as he saw the car driven by Kizziah begin to turn and that his brakes "screeched" and skidmarks were left a distance of approximately ninety-two feet. According to Johnson, the right-hand fender of his car hit the center of the right side of the car driven by Kizziah and knocked it over on the western side of the highway and that his car, that is, Johnson's car, finally came to rest some distance south of the point of collision on the eastern side of the highway. A picture of the automobile driven by Kizziah which was introduced in evidence strongly tends to support Johnson's version as to the location of Kizziah's car at the time of the impact.

A Mr. and Mrs. Sigler, who were traveling toward Birmingham on the afternoon of the collision and who were in the second car behind the car driven by Kizziah, substantiated his testimony in several material respects.

The foregoing is not a complete statement of the testimony introduced in the case, but we think it will suffice for the purposes of this appeal.

■■ The burden was, of course, on the plaintiff to prove that the negligence of the defendant was a proximate cause of the injuries to her intestate. We are clear to the conclusion that the evidence relating to the speed of the automobile driven by the defendant, under the prevailing conditions, was sufficient to justify a finding by the jury that the negligence of the defendant was a proximate cause of the injury.

■ But counsel for defendant strenuously argues that nevertheless plaintiff was not entitled to a verdict because of the defense of contributory negligence. As to this defense, of course, the burden was upon the defendant to prove it.

■ Plaintiff's intestate was riding as a passenger in the automobile driven by Kizziah. It is the generally recognized rule that a person riding in an automobile driven by another, even though not chargeable with the driver's negligence, is not absolved from all care for his own safety, but is under the duty to exercise reasonable or ordinary care to avoid injury; that is, such care as an ordinarily prudent person would exercise under like circumstances. McDermott v. Sibert, 218 Ala. 670, 119 So. 681. There is no evidence in this case which would support a finding that the plaintiff's intestate was himself guilty of negligence. It is not so contended by counsel for appellant.

It is contended, however, that Kizziah, the driver of the automobile in which intestate was riding as a passenger, was guilty of negligence which proximately caused

the injuries and that, therefore, plaintiff is not entitled to recover. . .

But Kizziah's negligence, if any, could not bar a recovery by plaintiff unless his negligence was imputable to plaintiff's intestate. It is a commonplace of the law that ordinarily a passenger in an automobile driven by another, over whom he has no control, is not, on that state of fact, without more, chargeable with contributory negligence. St. Louis-San Francisco R. Co. v. Norwood, 222 Ala. 464, 133 So. 27; Birmingham Electric Co. v. Turner, 241 Ala. 66, 1 So.2d 299; Moore v. Cruit, 238 Ala. 414, 191 So. 252; Roberts v. Louisville & N. R. Co., 237 Ala. 267, 186 So. 457; Morgan Hill Paving Co. v. Fonville, 218 Ala. 566, 119 So. 610; Id., 222 Ala. 120, 130 So. 807; Id., 224 Ala. 383, 140 So. 575; Newell Contracting Co. v. Berry, 223 Ala. 109, 134 So. 870; Strickland v. Davis, 221 Ala. 247, 128 So. 233.

The cases above cited support the conclusion that the evidence presented on this appeal makes no case of joint adventure or joint enterprise in the operation of a car in which plaintiff's intestate was an occupant.

The fact that the occupant is a passenger at his own request does not affect his status. Faltico v. Minneapolis Street Ry. Co., 198 Minn. 88, 268 N.W. 857, 65 C.J.S., Negligence, § 168, page 823. In Keller v. Keystone Furniture Co., 132 Pa.Super. 547, 1 A.2d 562, it was held in effect that the mere fact that the passenger's husband owned the vehicle and that the operator was driving at the owner's request does not make the operator the agent of the guest or establish the guest's right to share in the control of the vehicle.

The rule is well established that in order to create the imputation of negligence of the driver to the passenger, the passenger must have assumed control and direction of the vehicle or must have some right to a voice in the control, management or direction of the vehicle. 65 C.J.S., Negligence, § 168, pages 822-825; Crescent Motor Co. v. Stone, 211 Ala. 516, 101 So. 49.

We are inclined to agree with the assertion made by counsel for appellant that the great weight of the evidence shows that the car driven by Kizziah had proceeded from the eastern side of the highway toward the western side and was partly on the western side of the highway at the time of the impact. But even if it be assumed that such act on the part of Kizziah was negligent, it does not follow that the plaintiff was not entitled to recover under the evidence in this case, since any negligence of Kizziah cannot be imputed to plaintiff's intestate.

We have heretofore indicated that the evidence in this case was sufficient to support a finding by the jury that the defendant was guilty of negligence which proximately caused the injury to intestate. If the negligence of Kizziah, if any, which is not imputable to intestate, and the negligence of the defendant were concurring proximate causes of injury, the plaintiff was entitled to recover. Roberts v. Louisville & N. R. Co., 237 Ala. 267, 186 So. 457. In Moore v. Cruit, supra, 238 Ala. 419, 191 So. 255, it was said: "Nor is it essential for plaintiff's recovery that negligence of defendant's driver be shown as the sole proximate cause of his injuries. It is sufficient that his negligence, concurring with one or more efficient causes, other than plaintiff's fault, is the proximate cause. Chambers v. Cox, 222 Ala. 1, 130 So. 416."

We hold, therefore, that the trial court did not err in refusing the affirmative charge as requested by the defendant and in overruling his motion for a new trial on the ground that the verdict is contrary to the great weight of the evidence.

The judgment is affirmed.

Affirmed.

BROWN, FOSTER and STAKELY, JJ., concur.

### On Rehearing.

In our original opinion we did not pass on the question of whether the evidence shows as a matter of law that Kizziah, the driver of the car in which plaintiff's intestate was riding at the time of his in-

jury, was guilty of negligence which proximately contributed to intestate's injury. A decision on that question was unnecessary in view of our holding to the effect that the evidence did not show, as a matter of law, that the negligence of Kizziah, if any, could be imputed to intestate.

In briefs filed here in support of application for rehearing, counsel for appellant, defendant below, earnestly insist that the evidence in this case without dispute shows that Kizziah was the agent of intestate and that, therefore, intestate was chargeable with the negligence of Kizziah, which it is insisted appears without dispute.

It is well established that where a relation of principal and agent or master and servant exists between the driver and an occupant of an automobile, the negligence of the agent or the servant is imputable to the principal or master and will prevent his recovery against a third person. Brown v. Southeastern Greyhound Lines,[1] 51 So.2d 524; 5 Am.Jur. 785, § 499; 65 C.J.S., Negligence, §§ 161–162, pages 804, 805.

But we do not think the evidence as it appears in this record shows that as a matter of law Kizziah was the agent of plaintiff's intestate, Battles.

In the original opinion we summarized the facts as they tended to explain Battles' presence in the car driven by Kizziah. In deference to counsel for appellant, we set out below the evidence as given in brief, which it is contended shows as a matter of law that the relationship of principal and agent existed between Kizziah and intestate. We quote from appellant's brief, omitting, of course, conclusions of counsel drawn from the evidence and rulings on objections:

"For convenience, the testimony in support of this contention is quoted from the record as follows: On direct examination the witness Kizziah was asked the following questions and made the following replies.

"Q. Where were you going, Mr. Kizziah? A. Well, we was going—he was going to get Jack Dailey to take him over to Jack Martins' and Jack said if I would drive, he said he was sleepy and didn't feel like driving, and we started over there.

"Q. Over to Mr. Martin's? A. Yes, sir.

"On cross examination the witness Kizziah testified as follows:

"Q. What business were you going to Mr. Martin's on? A. Mr. Battles was going to see Mr. Martin.

"Q. Now, Mr. Battles asked Mr. Dailey to let him go to Mr. Martin's in his car, in Dailey's car? A. That's right.

"Q. And Dailey told him that he was sleepy? A. That's right.

"Q. And that you could ride him over there? A. That's right.

"Q. And you were driving Mr. Battles at Mr. Battles' request in Mr. Dailey's car to Mr. Martin's at the time of the collision? A. Yes, sir.

"Q. That's what happened? A. Yes, sir."

The testimony of the owner of the car as set forth in appellant's brief is as follows:

"Q. Did Mr. Battles make any arrangement with you as to the operation of the car? A. Yes, sir, he asked me to take him up there.

"Q. Mr. Battles asked you to take him where? A. Take him up towards Bucksville.

"Q. What did you tell him? A. I told him that I didn't feel like driving.

"Q. What did Mr. Battles say? A. He said he'd get Abram Kizziah to drive the car and he asked me if it would be all right and I told him it would.

"Q. And then Abram Kizziah proceeded to drive the car up the road and that's when the collision happened? A. Yes, sir."

At the time of the accident, as shown in the original opinion, Kizziah was driving the car, Battles was on the front seat with Kizziah, and Dailey was on the back. Dailey was asleep at the time of the accident.

1. Ante, p. 308.

632

 The rule is too well settled to require citation of authority that if Dailey, the owner of the car, had invited Battles to go on the trip, Dailey's negligence could not be imputed to Battles. And the rule would be the same if Dailey had been driving the car, although Battles had asked him to take him on the trip. Robinson v. Leonard, 100 Vt. 1, 134 A. 706; Faltico v. Minneapolis Street Ry. Co., 198 Minn. 88, 268 N.W. 857. The fact that the trip was taken for the sole benefit of Battles would not change the rule. In this connection we quote from Mork et ux. v. Caslov, 327 Pa. 298, 192 A. 903, 904:

"On the other hand, the plaintiff argues that her status in the car was that of a guest passenger; that while the trip was undertaken for her benefit and at her request, she had no control of the car, nor did she assume to direct her sister in its operation; that the sister did not, as a matter of law, become her servant or agent merely because she extended to plaintiff the accommodation of a conveyance.

"It is well settled that the status of an occupant of an automobile does not depend upon the fact that the purpose to be served is for his benefit, or even that the trip is made at his instance or request. In other words, the relation of master and servant, or of principal and agent does not arise in cases of this character solely from the fact that the occupant of the car is transported at his request, or in connection with some matter affecting his own interest, * * *."

Although Dailey the owner of the car, was not driving at the time of the accident, it cannot be said that the driver of the car became the agent of Battles merely because the trip was taken for Battles' benefit alone.

Kizziah in his direct testimony said that Dailey asked him to drive. On cross-examination he indicated the request came from Battles. Dailey's testimony was to the same effect. In any event, Dailey gave his permission that Kizziah drive and he, the owner, was in the car at the time of the accident. We just cannot say, under such a state of facts, that as a matter of law Dailey had surrendered his right of control of the operation of the car to Battles or that Battles had any right to control Kiz-

ziah in the operation of the car on the theory that he was his agent. And unless Battles had the right to control Kizziah, then, of course, Kizziah's negligence cannot be imputed to him. We think that under the evidence the jury could have found that Kizziah was the agent of Dailey, in which event the negligence of Kizziah would not be imputable to Battles. In McAndrews v. Leonard, 99 Vt. 512, 134 A. 710, 715, it was said: "The negligence of the driver was not imputable to the plaintiff. She had no control of the car nor of its management. The relation of master and servant, or of principal and agent, or of being engaged in the joint prosecution of a common purpose, did not exist between them. In driving the car on the occasion in question, the defendant was the agent of Attilio Franzoni, its owner, at whose request he was driving it, and he will be held to the same degree of care and responsibility to the plaintiff that his principal would have been had he personally been operating the car and the same accident happened in other respects under the same circumstances."

We have carefully examined the cases cited by counsel for appellant in brief. We do not think any of them are in point because the factual situations are in no wise analogous to that presented in this record.

Application for rehearing overruled.

LIVINGSTON, C. J., and FOSTER and STAKELY, JJ., concur.