Chicago, Burlington and Quincy Railroad Company, Appellee, v. California Wine Company, Appellant.

Gen. No. 41,818.

Opinion filed March 18, 1942.

ALLEN H. SCHULTZ, of Chicago, for appellant.

ELDON M. MARTIN, JAMES A. GILLEN, JOHN H. O'NEIL and ROBERT H. BIERMA, all of Chicago, for appellee.

Mr. Presiding Justic Burke delivered the opinion of the court.

On January 16, 1939, Chicago, Burlington & Quincy Railroad Company filed a complaint in the superior court of Cook county against the California Wine Company, asking judgment for the difference between the amounts paid by defendant on shipments of brandy from points in California to Chicago, and the rates allegedly applicable to such shipments in accordance with the tariffs on file. In its answer defendant asserted that it paid the proper rates. A trial before the court without a jury resulted in a judgment against defendant in the sum of $13,529.31. Defendant appealed. The case was tried on the pleadings, a stipulation of facts and two exhibits. Hence there is no dispute as to the facts.

Plaintiff is an interstate carrier by railroad, and in connection with other such carriers it transports property between Fresno and Bear Creek, California, and Chicago. It is subject to the provisions of an Act of Congress (1887) known as ''An Act to regulate interstate commerce'' and all acts amendatory thereof and supplementary thereto. Defendant is a corporation organized under the laws of Illinois. The first shipment was made on January 28, 1936, and the last on March 3, 1939. One shipment was from Bear Creek and 34 were from Fresno, a total of 35 shipments. We are asked to determine the rate applicable to the commodity shipped by defendant and transported by plaintiff. The trial court sustained plaintiff's contention that the commodity was ''Brandy,'' and that the rate published in tariff item 2970 was applicable. Defendant admits that the commodity transported was ''Brandy'' within the description of item 2970. Plaintiff's tariffs also carry items 2950 and 1060, naming a rate on ''Grape Alcohol (Spirits of Wine or White Brandy)'' which is lower than the rate on ''Brandy.'' Defendant contends that the ''Brandy'' so shipped can

also be properly described as "Grape Alcohol (Spirits of Wine . . .)" and that therefore, it is entitled to the lower rate. Tariff items 2950, 1060 and 1060B (which defendant maintains are applicable), read:

"2950 Liquors, viz.: Alcohol (other than denatured or wood), including Grape Alcohol (Spirits of Wine or White Brandy) . . . (Effective June 30, 1935.)

"1060 Alcohols, other than alcoholic liquors, viz.: Alcohol (other than denatured or wood), including Grape Alcohol (Spirits of Wine or White Brandy). . . . (Effective June 30, 1937.)

"1060B Alcohols, other than alcoholic liquors, viz.: Alcohol N. O. S. in glass or metal cans, boxed, in bulk in barrels or drums, or in tank cars, actual weight per gallon. (Effective May 1, 1939)."

Tariff item 2970 for which plaintiff contends, reads:

"2970 Liquors, viz.: Brandy (California), in glass, earthenware or metal cans, boxed, or in bulk in barrels, . . . (Effective June 30, 1935.)

"2970 Liquors, viz.: Brandy, in glass, earthenware or metal cans, boxed, or in bulk in barrels . . . (Effective December 1, 1935)."

The commodity shipped is the product of distilleries, registered with and authorized by the United States Treasury Department to so operate. The distilleries are located at or near Fresno, California. The product was produced between 1934 and 1937 by the distillation, solely, of the fermented juice or mash of grapes, plums, prunes and other fruits, and was distilled at less than 190 degrees proof. The product was then reduced in proof in the distillery, by the addition of distilled water, to an alcoholic proof ranging from 101 to 103 degrees proof and was invoiced to defendant as "Brandy." The coloring and flavoring matter, such

as caramel, was added to the product in the distillery. It was stored for periods ranging from 7 days to 4 years in charred oak barrels in an Internal Revenue Bonded Warehouse, operated under the regulations of the Bureau of Internal Revenue for the storage of distilled spirits other than alcohol on which the tax has not been paid. During the periods of storage the product gained an additional brown color due to the chemical reaction from contact with the charred oak barrels. The product, in the same barrels, was transported and delivered by plaintiff and its connecting lines to defendant at Chicago. At the time of such transportation the alcoholic proof of the product ranged from 101 to 103 degrees. The barrels so transported were marked, branded or labeled "Brandy" in conformity with the regulations of the United States Treasury. At the time of the movement of these barrels there was in effect a tariff published by plaintiff and its connecting lines, and on file with the interstate commerce commission, containing rules and regulations governing the transportation of alcohols and other inflammables. One shipment moved under the provisions of the rules and regulations concerning the transportation of alcohols and other inflammables. This shipment, consisting of 40 barrels of Grape Alcohol of 184 degrees proof and of a coloring different from the commodity here in issue, moved in a Southern Pacific car on March 11, 1936. None of the other shipments moved under such rules and regulations. The product here in issue, upon delivery to the defendant, was reduced by the addition of distilled water to 86 to 90 degrees proof by the Lawrence Warehouse Company, for the account of the defendant, and then bottled and labeled, all under the rules and regulations of the United States Treasury Department. The internal revenue tax paid by the defendant to the United States Treasury Department, when the product shipped was withdrawn from bond, was the

tax applicable only to "Brandy." The defendant then sold this product in bottles labeled "Brandy" and it reached the general public for consumption as "Brandy."

Defendant asserts that where two tariff rates apply to the same item, the shipper is entitled to the one specifying the lower rates. This principle is enunciated in *United States v. Gulf Refining Co.*, 268 U. S. 542, where at page 546, the court said:

"And where two descriptions and tariffs are equally appropriate the shipper is entitled to have applied the one specifying the lower rates." Plaintiff accepts this statement as the law, but insists that it had no application to the factual situation before us, and that in order for defendant to succeed in its appeal it must show an error of law affecting the judgment, or an error of fact in that the judgment appealed from is not sustained by the evidence, or is against the weight of the evidence. This is the requirement of paragraph 3, section 92 of the Civil Practice Act (sec. 216, ch. 110, Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 104.092].) Under the principle laid down in the *Gulf Refining Co.* case, it becomes necessary for defendant to establish that the two descriptions in the tariff items under discussion are "equally appropriate" to the same commodity. Defendant argues that "Brandy" is Spirits of Wine. He quotes Webster's New International Dictionary (2d Ed. 1934) 326, as defining "Brandy" as "A spirituous liquor distilled from wine." He also gives an excerpt from an article on "Brandy" written by Peter Valaer, an official of the United States Bureau of Internal Revenue. He states that this article is recognized as an official pronouncement on the "Brandy" situation in this country. It was published in March 1939, in a magazine called Industrial and Engineering Chemistry. Valaer says: "The general term 'brandy' is applied to the product obtained from distilling wine or the fermented juice of any fruit." Defendant also

supports his position by quoting from Regulations No. 5 issued by the Treasury Department, Federal Alcohol Administration, wherein brandy is defined as:

"A distillate, or a mixture of distillates, obtained solely from the fermented juice or mash of fruit (1) distilled at less than 190 degrees proof in such manner that the distillate possesses the taste, aroma, and characteristics generally attributed to brandy; . . . ." Article 1, section 2 (2) of the Illinois Liquor Control Act defines Spirits as:

"The word 'spirits' means any beverage which contains alcohol obtained by distillation, mixed with water or other substance in solution, and includes brandy, rum, whiskey, gin, or other spirituous liquors, and such liquors when rectified, blended or otherwise mixed with alcohol or other substance." The definition of Grape Brandy in paragraph 3 (j) of Regulations No. 7, Internal Revenue, Production of Brandy (1930) is:

" 'Grape Brandy' means the product resulting from the distillation of fermented grape juice, to which water may have been added prior to, during, or after fermentation, for the sole purpose of facilitating the fermentation and economical distillation thereof, and shall be held to include the product from grapes or their residues commonly known as grape brandy, and shall include commercial grape brandy which may have been colored with burnt sugar or caramel." In section 3036, 26 U.S.C.A., as amended by the Revenue Act of 1939, Wine Spirits is defined as:

"The wine spirits mentioned in section 3032 (a) is the product resulting from the distillation of fermented grape juice, to which water may have been added prior to, during, or after fermentation, for the sole purpose of facilitating the fermentation and economical distillation thereof, and shall be held to include the product from grapes or their residues commonly known as grape brandy, and shall include commercial grape brandy which may have been colored

with burnt sugar or caramel.'' From these authorities defendant draws the conclusion that brandy is a spirit of wine, and consequently means the same as the phrase ''Spirits of Wine.'' Defendant declares that the technical terms used in the tariff must be given their full meaning. Plaintiff agrees with this statement and inquires ''how better can one arrive at the full meaning of a term than by an examination of the technical definitions incorporated in the regulations of the United States Treasury Department?'' Such regulations are held to have the force and effect of law when not in conflict with statutory provisions. (*Daeuffer-Lieberman Brewing Co., Inc. v. United States*, 36 F. (2d) 568, 570; *Shapiro v. Lyle*, 30 F. (2d) 971, 973.) Plaintiff urges that assuming that ''Brandy'' and ''Grape Alcohol (Spirits of Wine . . .)'' are the same commodity, the principle of the *Gulf Refining Company* case is nevertheless inapplicable. Plaintiff calls attention to the fact that the commodity was invoiced to the defendant as Brandy, sold by the defendant as Brandy and that it reached the general public for consumption as Brandy. Plaintiff also states that such a designation fixes the identity of the commodity in determining the applicable rate for transportation purposes, citing the case of *Mead Johnson & Co. v. Atlantic Coast Line R. R. Co.*, 168 I. C. C. 157, where at page 158 the Interstate Commerce Commission said:

''This commission has held in a number of decisions that the manufacturer's description of a commodity for sales purposes also fixes its identity for transportation purposes. If a manufacturer finds it advantageous to describe his product in a manner calculated to give purchasers the impression that it is a different and higher-grade article than it actually is, he can not consistently complain if the carriers accept that description as a basis for the assessment of freight charges. *Andrews Soap Co. v. P. C. & St. L. Ry. Co.*,

4 I. C. C. 41; *Glidden & Co. v. Akron, C. & Y. Ry. Co.*, 153 I. C. C. 684. We find that Dextri-Maltose is properly classified under the southern and official classifications as prepared food not otherwise indexed by name." Plaintiff insists that if it be assumed that the "Brandy" description and the "Grape Alcohol (Spirits of Wine . . .)" description are equally appropriate to the same commodity, the principle of the *Mead Johnson & Company* case requires that the "Brandy" rate be assessed even though it is higher than the rate on "Grape Alcohol (Spirits of Wine . . .)," since the commodity was invoiced to the defendant as "Brandy" and was sold as "Brandy."

Plaintiff argues that "Brandy" is not "Grape Alcohol (Spirits of Wine . . .)." Defendant admits that the commodity is "Brandy" within the meaning of the tariff description in item 2970. Defendant maintains that it has shown that the commodity is both, "Brandy" and also "Spirits of Wine," and that under the rule set out in the *Gulf Refining Company* case, the shipper is entitled to the lower of the two published rates equally applicable to the same shipment, and that hence the judgment should be reversed and judgment entered for the defendant. The record shows that defendant made certain shipments, not involved in this proceeding, of a commodity of a coloring and alcoholic proof different from the commodity here in issue. Defendant shipped this other commodity in steel drums and labeled it inflammable alcohol in accordance with the requirements of plaintiff's tariffs. On this shipment plaintiff applied and defendant paid the "Grape Alcohol (Spirits of Wine . . .)" rate. Defendant then made shipments of the commodity in issue. The latter shipments were not in steel drums and defendant did not label the commodity as inflammable alcohol. Plaintiff states that the commodity here in issue was "Brandy" and not "Grape Alcohol (Spirits of Wine . . .)." In further support of its contention that the

commodity is "Brandy" and not "Grape Alcohol (Spirits of Wine . . .)," plaintiff points out that defendant purchased the commodity as "Brandy" and not as "Grape Alcohol (Spirits of Wine . . .)"; that defendant paid the United States Internal Revenue Department the tax applicable only to "Brandy"; that defendant put the commodity in bottles labeled "Brandy" and not "Grape Alcohol (Spirits of Wine . . .)"; that defendant sold the commodity as "Brandy" and not as "Grape Alcohol (Spirits of Wine . . .)," and that the commodity was stored in California in an Internal Revenue bonded warehouse operated under the regulations of the Bureau of Internal Revenue for the storage of distilled spirits other than alcohol on which the tax has not been paid. We agree with the contention of plaintiff that "Brandy" is not "Grape Alcohol (Spirits of Wine . . .)." Answering defendant's contention that section 3036, 26 U.S.C.A. supports its claim that "Brandy" and "Grape Alcohol (Spirits of Wine . . .)" are identical, plaintiff calls attention to the fact that this statute defines "Wine Spirits" and that its effect is merely to prove that "Wine Spirits" and "Brandy" are the same commodity and that it does not prove that "Grape Alcohol (Spirits of Wine . . .)" and "Brandy" are the same commodity. Plaintiff invites attention to section 3124 (a) U.S.C.A., which defines alcohol as "that substance known as ethyl alcohol, hydrated oxide of ethyl, or spirit of wine from whatever source or whatever processes produced," and to article 4 (b) of Regulation No. 3 defining alcohol as "that substance known as ethyl, hydrated oxide of ethyl, or spirit of wine, from whatever source or process produced, having a proof of 160 degrees or more, and does not include the substances commonly known as whiskey, brandy, rum or gin." The last mentioned definition makes it patent to us that "Brandy" (or wine spirits) is the direct antithesis of "Grape Alcohol

(Spirits of Wine . . .)." We agree with the plaintiff that the grammatical construction of "Grape Alcohol (Spirits of Wine . . .)" indicates that "Spirits of Wine" is simply a type of the generic commodity "Alcohol" and is not "Brandy." We also agree with plaintiff that the storage of the commodity in the Internal Revenue bonded warehouse operated for the storage of distilled spirits other than alcohol, the payment by defendant of the tax applicable only to "Brandy," defendant's whole conduct, and the United States Treasury Department Regulations clearly demonstrate that the commodity in issue is "Brandy" and not "Grape Alcohol (Spirits of Wine . . .)"; also that the principle of the *Mead Johnson & Co.* case operates to prevent defendant from complaining against the acceptance by the carriers of the description given to the commodity by the defendant in selling it to the public.

Defendant maintains that the change in the tariff description on June 30, 1937, and again on May 1, 1939, shows definitely the position of the Tariff Committee with respect to the meaning of the phrase Spirits of Wine. Defendant calls attention to the fact that the first change on June 30, 1937, eliminated the word "Liquors" and inserted the word "Alcohols"; that after the change on June 30, 1937, the description still retained the phrase "Spirits of Wine"; that this phrase was eliminated in the description given on May 1, 1939, and argues that the reason for this elimination may logically be construed to have resulted from the conflict in having two descriptions for the same item, which item is the subject matter in issue in this case. As the shipments involved in the case at bar embrace the period from January 28, 1936 to March 3, 1939, inclusive, the tariff rate which became effective on May 1, 1939 does not apply. Plaintiff quotes from *Chicago Great Western R. Co. v. Farmers' Shipping Ass'n,* 59 F. (2d) 657, 659, that "A railroad company tariff has

the force and effect of a statute and in determining the meaning thereof the usual rules of construction commonly applied to statutes and contracts are applicable.'' Plaintiff insists that as no ambiguity exists there is no room for construction of the language used in the tariffs. In answering plaintiff, citation of section 3124 (a) 26 U.S.C.A., and article 4 (b) of Regulation No. 3, defendant states that these definitions cover the production of industrial alcohol; that they do not apply to the instant case as the product here involved was not to be used for industrial purposes and was not manufactured in accordance with the rules and regulations applied to the manufacturer of alcohol for industrial purposes. Replying to the assertion of plaintiff that defendant paid the United States Internal Revenue Department tax applicable only to ''Brandy,'' defendant states that this argument cannot prevail because this tax also applies to ''Spirits of Wine,'' which defendant urges is defined to be the same product as ''Brandy.'' We have studied the record, the briefs and the authorities cited and are convinced that ''Brandy'' is not ''Grape Alcohol (Spirits of Wine . . .).'' Defendant did not pay the rate applicable to the commodity ''Brandy'' which it shipped and the court ruled correctly in finding the issues against the defendant and entering judgment accordingly. Therefore the judgment of the superior court of Cook county is affirmed.

*Judgment affirmed.*

HEBEL and KILEY, JJ., concur.