**Elmer Watt, Appellee, v. Yellow Cab Company, and Alexander Weiner, Defendants. Yellow Cab Company, Appellant.**

**Gen. No. 45,676.**

Opinion filed June 10, 1952. Released for publication June 30, 1952.

EZRA L. D'ISA, of Chicago, for appellant.

SCALISE, CHINO & SCHULTZ, of Chicago, for appellee.

Mr. Justice Schwartz delivered the opinion of the court.

At approximately 4:30 on the morning of June 8, 1948 defendant Alexander Weiner backed a cab of defendant Yellow Cab Company onto the sidewalk near the intersection of Lake Park avenue and 55th street, injuring one Elmer Watt, plaintiff herein. Watt sued both defendants jointly and recovered a judgment of $5,000 on the jury's verdict in his favor. From that judgment defendant Yellow Cab Company prosecutes this appeal. The sole issue presented to us concerns Yellow Cab's claim that Weiner was not in the course of his employment and furthering his master's interest at the time the accident occurred, but "was on a mission of his own and in the act of venting his ire upon plaintiff with whom he had been in dispute."

It was stipulated that the cab involved in the accident was the property of defendant Yellow Cab Company and that defendant Weiner was its driver on the day in question. Defendant introduced no evidence. Plaintiff cites cases stating that a person negligently injured by the vehicle of another while being driven by a third party makes out a prima facie case for recovery from the owner in tort merely by proof of ownership. *Howard v. Amerson,* 236 Ill. App. 587; *Kavale v. Morton Salt Co.,* 329 Ill. 445; *Warput v. Reading Coal Co.,* 250 Ill. App. 450; *McCarty v. Yates & Co., Inc.,* 294 Ill. App. 474. Once ownership is established, the burden shifts to the owner to present evidence showing that the driver was not an agent acting in the course of his employment. *Paulsen v. Cochfield,* 278 Ill. App. 596. Plaintiff contends that since defendants introduced no evidence on their behalf, the presumption of agency stands unrebutted, so that the action of the trial judge in sending the case to the jury cannot be questioned. He also contends that there is evidence to prove the agency. Defendant Yellow Cab

308

Company answers that plaintiff's own evidence shows that Weiner was not acting in the scope of his employment and in furtherance of his master's business. In order to dispose of these conflicting contentions, it will be necessary to analyze the evidence presented by plaintiff at the trial.

Shortly before midnight on the night in question Watt had come to a tavern, known as the Turf Club, at 55th street and Lake Park avenue, with a friend Herbert Anderson. About 2:30 a. m., the two were joined by an acquaintance Harry Burt. Half an hour later, according to Watt's story, he moved away from the bar temporarily to play the 26-game. While he was gone, the bartender placed some change for him on the bar. When he was through with the game, the change was gone and he was told by the bartender to ask Weiner, who was sitting a few stools away, about it. This, according to Watt, he did. Weiner denied any knowledge of the change, and an argument of ten minutes duration followed. Watt testified that the argument was not productive of real anger on either side and was patched up when it was suggested that he and Weiner have a drink and forget it. The four men then drank together for about an hour and discussed such non-controversial topics as baseball. Weiner stated that he did not even remember meeting Watt or having an argument with him or anyone else on the night in question. Burt, too, failed to recall any dispute and felt that the Turf Club would not allow such conduct. Watt and Weiner had never met prior to the night of the accident.

Plaintiff left the tavern first with his friends Burt and Anderson. They stood on the sidewalk on Lake Park avenue about 20 feet south of the intersection near 55th street, close to where Weiner had parked his cab. Watt was standing near the street with his back toward it. A few minutes later, Weiner left the

tavern and got into his cab. The three men talking noticed nothing peculiar as Weiner started up the cab and headed north; but the next thing they knew, Weiner had stopped his forward motion and had backed south on Lake Park avenue and right over the curb, knocking Watt down and against the building. Weiner then pulled forward and drove the cab off out of sight. However, a few minutes later he reappeared from the south, pulled the cab out into the intersection and then again backed up on the sidewalk next to the tavern. This time, however, he was, in the words of Watt, "further up about five foot," so that Watt was not hit again. At this point, Officer Fitzgerald arrived on the scene. He took over the cab and drove Weiner to the police station. Watt was taken to the hospital.

As a regular Yellow Cab driver, Weiner's time and methods were his own. He normally worked at night. He had many "steady customers" whom he picked up regularly at certain times, so that "he did not have to cruise the streets all the time." Weiner admitted having been in the Turf Club on the night in question, but he also stated that he had had over ten loads that night, so that he must have been driving as well as drinking during the evening. According to Burt, Weiner was going to pick up a load when he left the tavern about 4:00 a. m. Weiner's testimony was that he was going back to the Yellow Cab Company garage at the time of the accident.

The police officer testified that Weiner was going backward because he had gotten the cab over the curb around the corner and had been forced to back off of it. This would explain Weiner's backward motion on grounds other than the presence of an intent to injure Watt. Fitzgerald also testified that Weiner was unable to talk coherently after the accident. His testimony was corroborated by Burt. When asked whether he thought that Weiner's actions were intentional, Burt

replied, "I wouldn't say that. It looked to me like that he just couldn't control his cab, he couldn't make up his mind which way he wanted to go."

The cab company contends that Weiner acted intentionally "to chastise plaintiff because of the argument earlier." It relies on cases where employers were held not to be liable for wilful physical attacks by their agents on fellow workers or third parties because such attacks were not in the scope of employment and in furtherance of the employer's business. *Jackson v. Schreiber,* 209 N. C. 441, 184 S. E. 17; *Lanners v. Atchison, Topeka & Santa Fe Ry. Co.,* 344 Ill. App. 123; *Shannessy v. Walgreen Co.,* 324 Ill. App. 590. Plaintiff argues that Weiner was in the regular course of his employment; that the quarrel was mild and that drink rather than malice explains his peculiar behavior at the time of the accident.

The cases cited by defendant Yellow Cab Company are all distinguishable. In *Jackson v. Schreiber, supra,* the agent had run his car forward at plaintiff with the deliberate purpose of injuring him. Bad feeling between plaintiff and the agent had been of long standing, the plaintiff having previously shot at the agent. *Shannessy v. Walgreen Co., supra,* can be distinguished in the same way. While plaintiff and a friend were eating in defendant's drugstore, the manager told the friend to keep plaintiff out of the store, as he caused trouble and stole things. The manager threatened to hit plaintiff with a baseball bat if he came into the store again. All this was communicated to plaintiff after he had left the store. Plaintiff immediately went back into the store, not to buy but to settle things with the manager. The latter, being a much smaller and older man than plaintiff, did not wait for plaintiff to state his business, but picked up a bat and beat plaintiff with it immediately upon plaintiff's re-entry into the store. The manager's action was clearly delib-

erate and on a personal basis that could not be justified by any necessity of protecting his employer's property. In *Lanners v. Atchison, Topeka & Santa Fe Ry. Co., supra,* plaintiff's complaint against his employer for an assault by a fellow employee was dismissed on the pleadings because plaintiff failed to allege facts from which it might be inferred that the assault had occurred in the scope of employment and in furtherance of defendant's business. No such error is claimed in this case. Other cases cited by defendant are not analogous to the facts of the instant case.

It is difficult to believe that Weiner would have intentionally driven backward into a group of men because he still rankled over a minor argument apparently forgotten an hour before. Had he been intent on injuring Watt, going forward would have been a more effective technique, especially on the second trip when Watt was lying on the ground.

 The action of the trial court in submitting the case to the jury was entirely proper, even without giving any weight to the presumption of agency created by the fact that the Yellow Cab Company owned the cab. We are of the opinion that the case was properly submitted to the jury and that its verdict is supported by ample evidence.

*Judgment affirmed.*

TUOHY, P. J. and ROBSON, J., concur.