(No. 33869.—

Bertie Lee Robinson, Admx., Appellant, vs. William F. Workman, Appellee.

*Opinion filed September 25, 1956—Rehearing denied Nov. 19, 1956.*

James A. Dooley, of Chicago, Ezra J. Clark, and James F. Scott, of Canton, for appellant.

George P. Proctor, of Lewistown, for appellee.

Mr. Justice Daily delivered the opinion of the court:

On December 3, 1953, a complaint was filed in the circuit court of Fulton County by Bertie Lee Robinson, as administratrix, to recover money damages for the wrongful death of her husband, James Robinson, which allegedly resulted from an automobile collision caused by the wilful and wanton misconduct of the defendant, William F. Workman, in driving his automobile, in which decedent was riding as a guest, in such an erratic manner as to strike a machine being driven by one Karolyn Woodcock. In his answer, the defendant admitted that at the time of the accident, Robinson was riding with him as his guest, but denied that he was driving the automobile in question or that he was guilty of any improper conduct. Upon trial being had, the cause was submitted to a jury which returned a verdict for the plaintiff in the sum of $20,000. After motions for judgment notwithstanding the verdict and for a new trial were overruled, appeal was prosecuted by the defendant to the Appellate Court of Illinois, Third District, which reversed and remanded the cause to the trial court on the ground that the verdict was against the manifest weight of the evidence. (7 Ill. App.2d 42.) Thereafter, plaintiff filed a motion and affidavit pursuant to section 75 of our Civil Practice Act, (Ill. Rev. Stat. 1953, chap. 110, par. 199,) and the remanding clause was stricken and final judgment against the plaintiff was rendered thereon. Leave to appeal has now been granted by this court.

The facts are not in dispute. At approximately 5:30 P.M. on the evening of November 4, 1953, the station wagon owned by the defendant and in which both he and

the decedent were riding, was traveling west on State Route No. 9 at a point some two miles east of Canton, Illinois, when it struck the east-bound Woodcock car. The force of impact caused the station wagon to overturn and come to rest upside down on the north side of the road, killing Robinson almost instantly. Testimony was offered showing that the decedent's body was located against the passenger door of the front seat, but that Workman, being unconscious, was lying between the front and rear seat and almost equidistant from each side. It was also noted that Robinson's shoes were in place and there was testimony that at the time of his removal from the automobile, Workman had no shoe on either foot. A subsequent examination of the station wagon disclosed that one of defendant's shoes was wedged on the floorboard near the accelerator and the other was found on the floor behind the front seat. There were no eye-witnesses to the accident except the three participants, and of these, Woodcock was unable to remember any events immediately preceding or at the time of the collision and the defendant was incompetent to testify as to these happenings.

Some facts, however, were supplied by Herbert Leach who recalled that at the time in question, it being after dark, he was driving west on Highway No. 9 towards Canton when the defendant's station wagon passed him going in the same direction at approximately 45-50 miles per hour. Leach stated, without objection, that, although at first he noticed nothing peculiar about the Workman vehicle, as he followed the machine for a short distance he observed that it kept weaving from one side of the road to the other, and such action prompted him to remark to his companion, "Look at the way they are driving—they are going to have an accident." A few seconds later, Leach arrived upon the accident scene.

This account was supported by Floyd Schumacher, who stated that on the evening of November 4th he was proceed-

ing west on Route No. 9 when he approached two other cars traveling in the same direction, the one nearest to him being the Leach machine and the other the defendant's station wagon. As he attempted to pass the Leach automobile, Schumacher said, he noticed the erratic driving of defendant's machine and, being afraid to proceed around, continued to follow Leach until they came to the wreck. The plaintiff also offered evidence to show that at the point of impact, the defendant's station wagon was traveling at least partially on the wrong side of the road, that the decedent had neither owned nor been licensed to operate a motor vehicle since the late 1930's, that Robinson's injuries were confined largely to the head region, and that he had been known to be a man of careful habits.

In deciding that the jury verdict was against the manifest weight of the evidence, the Appellate Court felt that no direct or "substantial" proof was offered by the plaintiff to show that the defendant was driving, but that the contrary was indicated by the facts that Robinson was found in the front seat and Workman towards the rear of the station wagon, that the windshield was broken only on the driver's side, and that only Robinson suffered the face and head injuries which might be expected to result from striking such an object. That tribunal was also of the opinion that no clear evidence was produced as to who owned the shoe which was found pinned to the accelerator. Although the Appellate Court was asked to pass on the question of whether trial instructions were erroneous, it declined to do so in view of its decision to remand.

The defendant now contends that section 92(3)(b) of the Civil Practice Act (Ill. Rev. Stat. 1953, chap. 110, par. 216(3)(b),) which provides that this court shall reexamine cases brought to it from the Appellate Court as to questions of law only, precludes us from examining the record to determine whether the jury verdict was, as the Appellate Court appeared to hold, in fact against the mani-

fest weight of the evidence. It is true the statute relied upon has been construed to prohibit us from reviewing the question of fact arising upon the manifest weight of evidence. (*Olson* v. *Chicago Transit Authority,* 1 Ill.2d 83; *Victor* v. *Dehmlow,* 405 Ill. 249; *Gorczynski* v. *Nugent,* 402 Ill. 147.) It is likewise true that it is our duty to determine the correctness of the judgment reviewed, and while we will examine the opinion of the Appellate Court to determine whether its decision was predicated solely on an erroneous conception of law, what that court may assign as reasons for its judgment is not a matter of concern here. (*Merlo* v. *Public Service Co.* 381 Ill. 300; *Kee & Chapell Dairy Co.* v. *Pennsylvania Co.* 291 Ill. 248.) Stated differently, as long as we observe the limitation of the above principle of law, in determining the correctness of a judgment of the Appellate Court brought to us for review, we may examine its opinion to determine what in fact prompted such judgment, and we are not bound by the reasons which the court may assign for its holding.

Here, as may be gathered from the record and the opinion of the Appellate Court, defendant's appeal was predicated not only on the ground that the verdict of the jury was against the manifest weight of the evidence, but also on the theory that there was *no* evidence to support the essential allegations of the plaintiff's complaint, thus making it error for the trial court to overrule defendant's motions for a directed verdict, and for judgment notwithstanding the verdict. Although the Appellate Court concluded its opinion with a statement that the verdict of the jury was against the manifest weight of the evidence, a closer scrutiny of its opinion shows that its judgment was in fact based upon findings that plaintiff had presented *no* evidence to support her material allegations. That this is so may be gathered from the following statements of the court: "* * * a careful analysis of the evidence fails to show *any* probative facts upon which a conclusion that

the defendant was driving could be based. \* \* \* the conclusion reached by this court that there is *no* proof that the defendant was driving the car \* \* \* also concludes the question as to wilful and wanton conduct on the part of the defendant, \* \* \* there is *nothing* to prove that plaintiff's intestate did anything to prevent the accident \* \* \*." (Emphasis supplied)

Thus, while the court purported to base its judgment on a conclusion that the verdict was against the manifest weight of the evidence, it is apparent that the judgment entered on the verdict of the jury was set aside solely upon the erroneous conclusion that there was *no* evidence to support it. To quote from *Duffy* v. *Cortesi,* 2 Ill.2d 511, 517: "It is established \* \* \* that it is a question of law whether there is any evidence in the record to support a particular finding. *Sterling Midland Coal Co.* v. *Great Lakes,* 334 Ill. 281; *Lain* v. *Metropolitan Life Ins. Co.* 388 Ill. 586; *Ahlenius* v. *Bunn & Humphreys,* 358 Ill. 155; *Seiders* v. *Henry,* 347 Ill. 467; *Roon* v. *Van Schouwen,* 406 Ill. 617." For this reason, we are of the opinion that this court has jurisdiction to consider the correctness of the Appellate Court's judgment.

The rule is that in deciding whether there is any evidence to support a particular finding, this court must examine the record and determine whether there is some proof, which, taken with its intendments most favorable to the plaintiff, tends to sustain the essential allegations contained in the complaint. (*Hall* v. *Chicago and North Western Railway Co.* 5 Ill.2d 135; *Sims* v. *Chicago Transit Authority,* 4 Ill.2d 60; *Seeds* v. *Chicago Transit Authority,* 409 Ill. 566; *Mirich* v. *Forschner Contracting Co.* 312 Ill. 343.) Here, it was incumbent upon the plaintiff to prove that the defendant was in fact driving the car; that he was guilty of wanton misconduct in its operation; that such misconduct was the proximate cause of Robinson's death, and that decedent was free from contributory fault.

As to the driver's identity, she showed that the station wagon was owned by the defendant, that one of his shoes was found pinned to the floorboard near the accelerator and the other between the seats where defendant was lying, that Robinson's body was located in the passenger's seat, and that the decedent had neither a driver's license nor owned an automobile since the late 1930's. In regard to the questions of proximate cause and of the driver's wanton misconduct, evidence was offered showing that for some distance prior to the accident, defendant's vehicle was traveling after dark at an approximate speed of 50 miles per hour while swerving from one side of the public highway to the other, and that at the point of impact, this machine was at least partially in the east-bound lane. Finally, proof of decedent's freedom from such misconduct was made by offering testimony as to his careful habits and customs as observed by his employers.

We cannot agree that there was insufficient evidence to support the plaintiff's allegations. We must consider not only the proof itself but also the presumptions which arise by operation of the law. This court has frequently held that every presumption will be indulged against unlawful acts, (*Tuthill* v. *Rendelman,* 387 Ill. 321; *Stephens* v. *Collison,* 330 Ill. 48; *White* v. *Bates,* 234 Ill. 276; *Russell* v. *Baptist Theological Union,* 73 Ill. 337; 5 Am. Jur., Automobiles, sec. 605, p. 838,) and in favor of the human instinct of self-preservation and avoidance of danger. (*Consumers Co.* v. *Industrial Com.* 364 Ill. 145; *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* v. *Keenan,* 190 Ill. 217; *Casey* v. *Chicago Railways Co.* 269 Ill. 386. It has also been held in automobile injury cases, that proof of ownership raises a presumption that the machine was under the defendant's control at the time of the accident, and the burden of rebutting this inference then passes to the latter. (*Kavale* v. *Morton Salt Co.* 329 Ill. 445; *Watt* v. *Yellow Cab Co.* 347 Ill. App. 307, 106 N.E.2d

760; *Rose* v. *Ruan Transport Corp.* 214 F.2d 583; 61 C.J.S., Motor Vehicles, sec. 511, p. 226.) Yet, in this case, the Appellate Court completely ignored these principles to say, in effect, that Robinson was operating the automobile without a driver's license, that he at that time abandoned his usual careful habits, and that defendant's car was being driven by a man who had not been known to drive for the past 15 to 20 years. Further evidence of that court's failure to properly evaluate the testimony is shown by its statement that "It is not clear whether or not this shoe belonged to Workman * * *," when, in fact, the shoe found pinned to the accelerator was later positively identified by both Workman's wife and niece as belonging to the defendant.

Although it is true that plaintiff's case was largely circumstantial, it was the highest degree of proof that was available under these conditions, and unless liability is to be denied in all such instances, it must be accorded the same judicial concern as are other types of evidence. (*Metropolitan Trust Co.* v. *Bowman Dairy Co.* 369 Ill. 222; *Devine* v. *Delano,* 272 Ill. 166; *Ohio Building Safety Vault Co.* v. *Industrial Board,* 277 Ill. 96.) For the reasons stated, it is our opinion that the Appellate Court for the Third District erred in setting aside the jury's verdict and that its judgment must be reversed.

However, since the Appellate Court has not properly considered the question of manifest weight of the evidence and, because of the result it reached, found it unnecessary to pass upon the other alleged errors occurring at the trial, the cause must be remanded. Accordingly, the cause is remanded to the Appellate Court for the Third District, with directions to affirm the judgment of the trial court if no further reversible error is found.

*Reversed and remanded, with directions.*