Chicago, Rock Island & Pacific Railroad Company, Plaintiff-Appellant, v. Pacific Wine Company, Defendant-Appellee.

Gen. No. 46,935.

First District, Third Division.
January 16, 1957.
Released for publication March 5, 1957.

O. L. Houts, and E. D. Curlee, of Chicago, for plaintiff-appellant.

Schultz & Biro, for defendant-appellee.

JUDGE KILEY delivered the opinion of the court.
Plaintiff Railroad sued defendant Wine Company, on three counts, to recover balances claimed to be due for freight rates upon three separate shipments of sparkling wine delivered by the Railroad. The Court, without a jury, found, and entered judgment, for defendant on all counts and the Railroad has appealed.

The facts are stipulated. The shipments were made November 29, 1948, December 10, 1948, and November 3, 1950. In 1948 the lawful freight rates, under the published tariff, were:

"Wine (Except champagne)....$1.51 per 100 pounds.
Champagne ................$3.38 per 100 pounds."

The freight rates for 1950 were $1.65 and $2.60 respectively. The Wine Company accepted the shipments and paid the lower rates. The Railroad demanded the higher rates and has sued for the difference between the lower rates and higher rates.

■ ■ The parties concede that plaintiff has the duty to collect the lawful rate (Pillsbury Flour Mills Co. v. Great Northern Ry. Co., 25 F.2d 66) so that no consideration of estoppel is relevant. There is no dispute either about the rule that the designation, for sales purposes, of the commodity shipped determines the applicable rate. (Chicago, B. & Q. R. Co. v. California Wine Co., 313 Ill. App. 498.) The question is whether the court correctly interpreted the manufacturer's designation of the sparkling wine in this case.

The bills of lading described the shipments as "Sparkling Wine." The manufacturer's invoices described them as "Saratoga Champagne." Every bottle in the three shipments was labelled:

"Sparkling Wine
California Champagne
Naturally Fermented—Bulk Process"

At the time of the shipments there were in effect Sections 3223–3224 of Regulation 124 promulgated under the Federal Alcohol Administration Act, governing the production, sale, labelling and advertising of all alcoholic liquor products sold in the United States. These sections contained definitions of "Class 2. Sparkling Grape Wine" and of "(b) Champagne." Authorization was given in Regulation (c) for the designation of a "sparkling white wine" as "Sparkling Wine—California Champagne—Bulk Process."

The authorized designation (c) is the important provision in the instant case. The wine described in that provision is not champagne as defined in (b), since the secondary fermentation in the former may take place in "a closed container, tank or bottle," while in cham-

pagne proper (b), the secondary fermentation must take place "solely . . . within glass containers of not greater than one gallon capacity." The wine subject of the suit was fermented secondarily in vats and is therefore not champagne. But the controlling factor is the manufacturer's designation.

The authorization to designate sparkling light wine as California Champagne was qualified in that the words added to the general designation "Sparkling Light Wine" were required to be "equally conspicuous . . . and in lettering approximately one-half the size of the words 'sparkling wine.'" The label in the record discloses the words "Sparkling Wine" in block letters about one-eighth inch in height. Directly beneath in script are the words "California Champagne," the capital letters being about seven-sixteenths of an inch high. Beneath these are the words "Naturally Fermented—Bulk Process," with the capital letters about one-fourth inch tall and the small letters a little less than one-eighth inch tall. Thus the label did not meet the qualifications in the provision authorizing the designation "California Champagne."

█ There is undisputed testimony that all labels intended for bottles of alcoholic liquor must be approved by the Federal Alcohol Administration; that a preliminary approval of a sketch of the label is first obtained and thereafter the label is submitted; that if approved a stamp of approval is given and the label returned to the manufacturer; and that the manufacturer is subject to fine for having in possession an unapproved label. We will not presume that the manufacturer violated the law (Robinson, Admx. v. Workman, 9 Ill.2d 420, 427), but in the absence of a showing to the contrary we presume that the label used was given approval. The Federal approval necessarily was for California Champagne, bulk-processed, and not for true champagne. This fact distinguishes Cream of

Wheat Co. v. A. T. & S. F. Ry. Co., 91 I. C. C. 45, where cereals labelled as such were shipped as wheat grits. The fact also distinguishes other cases where commodities were not truthfully designated. Finally, the Federal agency's approval overrides the failure to meet the qualifications for lettering on the label and establishes the manufacturer's designation which controls the applicable rate. The approval indicated that the agency considered the designation sufficient although the label did not strictly conform to the requirements of the Regulation.

■ We think it follows that the manufacturer's designation was not for champagne and that the defendant was entitled to have the lower rate applied to the shipments. It is our opinion that the trial court's decision was right and it is affirmed.

Affirmed.

FEINBERG, P. J. and LEWE, J., concur.