165 So.2d 84

**Betty Jean STANLEY**

v.

**Wilson HAYES, as Adm'r.**

I Div. 110.

Supreme Court of Alabama.

May 28, 1964.

Jas. R. Owen, Bay Minette, for appellant.

Chason & Stone, Bay Minette, for appellee.

PER CURIAM.

Plaintiff, Betty Jean Stanley, appeals from a judgment for the defendant following a verdict directed by the trial court in favor of defendant.

The complaint as amended alleges that plaintiff " * * * was a guest passenger in a vehicle owned and operated by Defendant's intestate and which said vehicle was being driven at said time * * * on a public highway in Alabama, * * * the Defendant's intestate did wantonly injure the Plaintiff by driving her said automobile at a wantonly excessive rate of speed and wantonly causing, allowing or permitting the said vehicle to turn over on said road several times, and as a direct and proximate cause of said willfulness and wantonness the Plaintiff was willfully and wantonly injured in this: (injuries are here catalogued)."

The plaintiff undertook to prove her allegation that defendant's intestate was driving the vehicle at the time by questions to plaintiff as follows: "Have you ever driven this automobile that was involved in the accident?" and, "Who was in the automobile with you?"

The trial court sustained objections to these questions presumably on the ground that the plaintiff was disqualified to answer because of § 433, Title 7, Code 1940, often referred to as the "dead man's statute," which reads as follows:

"In civil suits and proceedings, there must be no exclusion of any witness because he is a party, or interested in the issue tried, except that no person having a pecuniary interest in the result of the suit or proceeding shall be allowed to testify against the party to whom his interest is opposed, as to any transaction with, or statement by, the deceased person whose estate is interested in the result of the suit or proceeding, or when such deceased person, at the time of such transaction or statement, acted in any representative or fiduciary relation whatsoever to the party against whom such testimony is sought to be introduced, unless called to testify thereto by the party to whom such interest is opposed, or unless the testimony of such deceased person in relation to such transaction or statement is introduced in evidence by the party whose interest is opposed to that of the witness, or has been taken and is on file in the cause. No person who is an incompetent witness under this section shall make himself competent by transferring his interest to another."

■ As said in Southern Natural Gas Co. v. Davidson, 225 Ala. 171, 142 So. 63 (3, 4), this section applies, among other conditions, when (1) the witness has a pecuniary interest in the result of the suit, and (2) the deceased acted in a representative relation to the party against whom the evidence is offered, and (3) he testifies to a transaction with the deceased. The facts in the case at bar show the existence of (1) and there is no contention that (2) is involved. The question is whether the allegations of the complaint, if so, show a transaction with deceased.

An application of this statutory exclusion was made in the case of Southern Natural Gas Co. v. Davidson, supra, but denied in the case of Gibson v. McDonald, Admr., 265 Ala. 426, 91 So.2d 679. In this latter case, this court summarized the situation by observing that there was an automobile accident at a street intersection in Birmingham, in the early hours of January 28, 1953, to which there were no eyewitnesses except the drivers of the two cars, both of whom were killed, and Ruby Gibson (appellant), who was riding as a guest in the Buick car driven by Josephus Per-

**536**

ry. The other vehicle was driven by one Fortenberry, intestate of defendant.

In the Gibson case, we observed: "* * * To put it another way, does the testimony sought to be introduced fall within the category of testimony 'as to any transaction with, or statement by, the deceased person whose estate is interested in the result of the suit or proceeding?' " (265 Ala. 428, 91 So.2d 681).

We said in the Davidson case, supra:

"* * * that to come within the influence of the statute (dead man's statute) the testimony 'must be [of] some act done by the deceased, or in the doing of which he personally participated.' In both of these cases [previously cited] the evidence related to what was called 'collateral facts,' but there is excluded all 'negotiations, interviews and actions between the parties.' It was also shown that a 'transaction' involved the idea that 'something (was) done by both parties acting in concert, in which both took part,' and does not include matter which did not come to his knowledge by personal dealings with the deceased. (Cases cited)

\* \* \* \* \* \*

"It is said in 5 Jones on Evidence, §§ 2228 and 2261, that such a rule of exclusion as our section 7721 applies to tort actions as well as others. Our cases make no distinction. The authorities do not seem to be influenced by the kind of suit, but the character of the incidents related by the witness. Our cases exclude *conversations, orders,* and all forms of communications between the parties, and all their personal dealings and conduct. The evidence of matter which is open and public is not the test. But the test is that it relates to some personal dealings whether others have equal opportunity to see and observe or not. The concurring conduct of the participants constituting the res gestae of a per-

sonal *conflict* or *encounter* between them has been held to be a transaction within the effect of such a statute. (Cases cited)

"The conduct of Ed Green constituting that which is alleged to have been negligent and a breach of duty to plaintiff causing his injuries and damage, which occurred in his presence, and a part of the res gestae of such negligent conduct was of the nature of personal dealings with plaintiff under the rule, and constituted a 'transaction' within the meaning of our statute. Appellant duly excepted to the rulings of the court as to such evidence, and we think that in this there was reversible error." (Emphasis supplied.) (225 Ala. 173–174, 142 So. 64–65.)

Adverting again to the case of Gibson v. McDonald, supra, decided by this court since the Davidson case, supra, we made some distinctions and observations which we think are pertinent and have application to the case at bar.

"* * * She (Ruby Gibson) had no supervision or control over what he did or failed to do in the operation of this car. Under these circumstances, even if Josephus Perry was guilty of any negligence, such negligence could not be attributed to Ruby Gibson. She was not occupying the automobile driven by defendant's intestate, Howard Wallace Fortenberry, nor was he driving his car as her servant, agent or employee and it was not being operated under her supervision or control. In short, she was free from any fault in connection with this accident. She was innocent of the result which took place outside of her control. She took no part in the occurrence other than to be present in the car of Josephus Perry when the collision occurred. She was more or less an observer of the accident and had no dealings with defendant's intestate pertaining to any phase of this accident. She did not mutually participate in it with him. He made no

statements to her and she made no statements to him about anything pertaining to the accident. Ruby Gibson endeavored to testify to facts and circumstances regarding this accident within her own observation and knowledge. She attempted to state to the court what she saw take place between the car driven by defendant's intestate and a third party. This testimony the court refused to allow her to give. Suppose Ruby Gibson had been standing on the sidewalk at the time of the collision and was injured by reason of the collision. Could it be said that by reason of this statute she was barred from giving her version of the circumstances and details of the accident as she saw them? Plainly we think that she was not so barred. If this is true, what is the difference between a situation where she received injuries on the sidewalk and a situation where she received injuries simply riding in the car driven by Josephus Perry involved in an accident, as in the case at bar? It seems to us that there can be no valid distinction between the two situations and that the view here expressed is supported not only by the Alabama authorities which have construed the Alabama statute but by authorities from other jurisdictions.

\* \* \* \* \* \*

"In Warner v. Warner, 248 Ala. 556, 28 So.2d 701, 702, the rule was reaffirmed that the statutory rule disqualifying a witness who is interested in the result of a suit from testifying to facts coming to his knowledge through personal dealings with decedent whose estate is affected by the issue, is limited to personal dealings *in which both parties participated.*

"The above cited cases show that while the word 'personal' does not appear in § 433, Title 7, Code of 1940, the statute has been construed by the Supreme Court of Alabama to require that the transaction sought to be excluded must be a personal one. As shown by the facts which we have recited above, how can it be said that the transaction between Ruby Gibson and Howard Wallace Fortenberry, was a personal transaction? Obviously it could not be so." (Emphasis supplied) (265 Ala., 429–431, 91 So.2d 682–683).

Thereupon, we adverted, with approval, to the case of Seligman v. Hammond (Orth), 205 Wis. 199, 236 N.W. 115, 117, wherefrom we quoted:

"We do not regard these questions and answers as dealing with a personal transaction or communication with decedent. They are the history of an event in which the decedent, with others, was involved, but not one personal between him and the witness. It was partly, also, a description of what the driver of the other car was doing, and in part a description of the place where the accident occurred, and of the individual acts of the defendant in driving his car and in seeking to avert an accident. The defendant was competent to testify to any relevant matter, not being a transaction with the decedent personally."

We also quoted with approval from the case of Krantz v. Krantz, 211 Wis. 249, 248 N.W. 155, 157, as follows:

"This case again squarely presents the question as to whether a passenger, who did not participate in the operation or control of an automobile at the time of an accident, is competent, notwithstanding the death of the driver, and the provisions of section 325.16, Stats., to testify as to his observations of the driver's movements and actions in operating and controlling the automobile. That question was given extended consideration recently in Waters v. Markham, 204 Wis. 332, 235 N.W. 797, and Seligman v. Hammond, 205 Wis. 199, 236 N.W. 115, 117. There are conflicts in the results at which courts have arrived, under the statutes, on this subject in other states. To some

extent those conflicts are due to differences in the wording of the statutes involved. Under section 325.16, Wis. Stats., the prohibition as to a party (or other person included in the class described in the statute) testifying is solely that he shall not testify 'in respect to any transaction or communication *by him personally with* a deceased or insane person,' etc. When due significance is accorded the italicized words, 'by him personally with,' the transaction meant in that statute is, as we held in Seligman v. Hammond, supra, a mutual transaction between the deceased and the witness who survives, in which both, the survivor, as well as the deceased, *actively participated. The statute 'does not prohibit the survivor from describing an event or physical situation, or the movements or actions of a deceased person, quite independent and apart, and in no way connected with, or prompted or influenced by reason of, the conduct of the party testifying.'* Seligman v. Hammond, supra. Thus construed, the statute did not bar the testimony of plaintiff as to his observations and description of the physical situation, and the movements and actions of the driver at the time of the accident." (Emphasis supplied)

Again quoting from Gibson v. McDonald, supra, we said:

"It will be noted from the last cited authority (Krantz v. Krantz) that under the Wisconsin Statute the prohibition is that the witness 'shall not testify "in respect to any transaction or communication by him personally with the deceased or insane person." ' The word 'personally' is emphasized in the opinion, but as we have pointed out while the word personally is not in the Alabama Statute the Alabama Statute has been construed to mean a transaction which the witness has had personally with a deceased person. 70 C. J., § 398. See also Hardison v. Gregory, 242 N.C. 324, 88 S.E.2d 96." ·

█ If the plaintiff was only a guest or passenger in the automobile, was not exercising any supervision or control over what the driver did or failed to do in the operation of the car, was free from any active fault in connection with such operation, and took no part in the occurrence other than to be present in the car as a guest or passenger when the accident occurred, we think she was in a situation factually parallel to the plaintiff in the Krantz case, supra, and should be permitted to testify that Mrs. Shores was driving at the time of the accident, and to answer the aforequoted questions to her, which are negative but of like import. Also she should be permitted to testify to facts and circumstances regarding the accident, the driver's movements and actions in operating and controlling the automobile, all within her observation and knowledge, but not to statements by or conversations with her.

If it should appear, however, from the evidence without dispute that plaintiff was not a mere guest or passenger, or if either, she did exercise supervision or control as outlined above, or was not free from active fault in connection with such operation, and took some part as a participant in the occurrence, the trial judge should exclude from the jury on motion the evidence of the witness so admitted.

If such facts and circumstances relate to the participation vel non of the plaintiff in and about the supervision or the operation of the automobile, or as to plaintiff's status as a guest or passenger, and the jury is reasonably satisfied from the evidence that the plaintiff did supervise or control the operation of the car, or that plaintiff's status was not that of a mere guest or passenger, then the court should instruct them to disregard such testimony of the plaintiff, and, if there is no other admissible testimony as to the identity of the driver, to return a verdict for the defendant.

█ We held in Qualls v. Monroe County Bank, 229 Ala. 315, 156 So. 846(2),

that both negative and affirmative testimony are within the rule prohibiting a witness from testifying as to statements or transactions with a decedent whose estate is interested in the result of a suit. The questions propounded to the witness in the case at bar sought negative testimony that in our opinion was not precluded by the "dead man's statute." The court committed reversible error in sustaining objections thereto.

Mrs. Robert Hagel, a witness for plaintiff, testified that on September 27, 1961, she heard a loud crash about 2:00 or 3:00 o'clock in the morning near her home; that she ran outside immediately, where she saw a wrecked car and two women, one of whom was lying in the middle of the road and the other (plaintiff) in the ditch on the grass; that she ran back to her home, called the telephone operator, and told her to notify the police. In just a few minutes Officer Osburn arrived, followed shortly by an ambulance. She also testified that there was a warning or blinker light in operation close to the scene of the accident. Also she stated that she went immediately to the scene of the wreck after the crash, and that she saw no one there other than the two women involved in the wreck until the officer and the ambulance arrived.

Frank Osburn, a witness for plaintiff, testified that he was at the time Assistant Chief of Police of Foley, and had served as police officer for sixteen years. We will not detail the training and experience which the witness testified he had had with respect to investigating automobile accidents, but it suffices to say that the training he stated he had received, together with his experience, was in our opinion ample to qualify him as an expert on the subject of such accidents and details relating thereto, including speed of automobiles involved in collisions as shown by skid marks and kindred physical signs.

The witness stated that at the time of the accident there were present on the highway at the scene of the accident two thirty-mile-an-hour speed zone signs, a horizontal S curve sign, and two slow signs on the right hand side of the blacktop; and also a "reduce speed" sign; that the character of the road some 700 feet towards Elberta to the place where he found the automobile was on a rise; that it was an S curve for a distance of some 700 feet.

He also testified that when he arrived at the scene of the accident he found a 1961 Comet automobile in the left lane of the road at the west end of the curve; that the car blocked the right lane going east. He also described the condition of the Comet car at the scene of the accident.

He further observed that he found skid marks leading east to west 657 feet that lead up to the place where he found the wrecked car; also that the skid marks started 632 feet "back here coming into the curve in here," Also he stated that he found "debris from the car" scattered all over this lane, to where the car stopped on the blacktop.

"Q. What is the distance from the point where you first observed the skid marks back towards Elberta to where the skid marks ended?— Will you refer to your notes and tell the Court and jury that?

"A. To where the skid marks ended?

"Q. Yes sir?

"A. That was 432 feet.

"Q. How far was it from where the skid marks ended up to the place you found the automobile?

"A. 225 feet.

  *   *   *   *   *   *

"Q. Getting back to where these skid marks ended—the 225 feet between where the skid marks ended and the place where you found the automobile, did you find anything between those two points?

"A. Yes, I found a lot of debris from the car; found dug-out holes where the car top dug out in the ground.

"Q. Did you find any glass?

"A. I did sir."

The witness then testified that when he arrived at the scene three ladies were present—Mrs. Hagel, the plaintiff, and Evelyn Shores; that Mrs. Shores was on the east side of the 1961 Comet on the driver's side right even—her feet right even with the door—lying on the blacktop; she was completely out of the automobile with her head close to the center line of the blacktop. Mrs. Stanley was down in the ditch west of the car. Both were injured. Also he testified that he found some lady's shoes under the accelerator of the Comet car and that Mrs. Stanley had on her shoes.

We think under the facts and circumstances here presented that the witness Osburn should have been allowed to give his judgment as to the speed of the automobile at the time of the accident. The record is not clear to us on what grounds the court sustained objection thereto. There is evidence as to lengthy skid marks (432 feet) made before the automobile presumably turned over; that was no inference or evidence that the car hit a moving object, so as to make it "behave in a manner which seemingly defies all laws of physics." Mobile City Lines v. Alexander, 249 Ala. 107, 112, 30 So.2d 4, 8; Jowers v. Dauphin, 273 Ala. 567, 143 So.2d 167. We hold the rule enunciated in Jackson v. Vaughn, 204 Ala. 543, 86 So. 469(3), here applies. It sustains the principle that one shown to be an expert, as here, may express an opinion as to the speed of an automobile predicated on the distance the tires "skidded" or were dragged along the highway before impact. This case was cited with approval in Johnson v. Battles, 255 Ala. 624, 52 So.2d 702.

The trial court admitted in evidence, over the objection of defendant, a copy of a license tag receipt issued to Mrs. George P. Shores for a 1961 two-door Comet, bearing license tag No. 5–1608. This copy was duly certified by the Probate Judge of Baldwin County as a full, true and correct copy of the 1962 License Tag Receipt No. 5–1608 as it appears of record in his office.

This license receipt copy, when properly shown that the licensee and Evelyn Shores, the decedent, were one and the same person, was admissible in evidence, and created a rebuttable presumption that Mrs. Shores was the owner of the Comet car involved in the wreck. Cox v. Roberts, 248 Ala. 372, 27 So.2d 617(3); Shipp et al. v. Davis, 25 Ala.App. 104, 141 So. 366; Ford v. Hankins, 209 Ala. 202, 96 So. 349 (1).

Appellant contends that the rebuttable presumption of ownership created by the issuance of a license tag receipt and tag to the decedent, Mrs. Shores, gives birth to a rebuttable presumption that she was driving the automobile at the time of the accident. Appellee contends that no such presumption obtains because it would be contrary to the rule that an inference cannot be predicated on another inference.

The Alabama rule is that where a driver of an automobile is involved in an accident, a rebuttable presumption of agency exists between him and the owner of the car on proof of an administrative presumption of ownership or other competent proof of such ownership. It is further proof that such agent was acting within the line and scope of his authority, but subject to rebuttal. Barber Pure Milk Co. v. Holmes, 264 Ala. 45, 84 So.2d 345.

This court being committed to the rule that a rebuttable presumption of agency exists between the driver and the owner of the vehicle involved in an accident on proof that defendant's name appears on the vehicle, or that the vehicle is licensed or registered for a license plate in his name, we think it logically follows, and we so hold, that proof of such ownership also raises a presumption, in automobile injury cases, that the machine was at the time of the accident, the owner being then and there present, under the owner's control or was being driven by him, and the burden of re-

butting this presumption passes to such owner. Robinson v. Workman, 9 Ill.2d 420, 137 N.E.2d 804(9); Kavale v. Morton Salt Co., 329 Ill. 445, 160 N.E. 752; Watt v. Yellow Cab Co. et al., 347 Ill.App. 307, 106 N.E.2d 760; Rose v. Ruan Transport Corp., (7 Cir.), 214 F.2d 583(1, 2); 61 C.J.S. Motor Vehicles § 511(5)b (b), p. 218, and cases cited; Renner v. Pennsylvania R. Co., Ohio App., 103 N.E.2d 832(7); Rodney v. Staman, 371 Pa. 1, 89 A.2d 313(6, 7), 32 A.L.R. 2d 976.

We conclude the evidence as to the physical condition of the road at the time, the distance the car skidded, and its physical condition after it came to rest, and the presence of warning signs on the side of the road, together with the estimated speed of the car at the time, would be admissible for the jury to determine whether or not the driver of the car was guilty of wantonness in its operation as charged in the complaint. Shirley v. Shirley, 261 Ala. 100, 73 So.2d 77(14, 15).

We pretermit any discussion of the averment that defendant's intestate willfully and wantonly injured plaintiff. When such averment is in the conjunctive, as here, proof of willfulness or design or purpose is necessary. Dickey v. Russell, 268 Ala. 267, 105 So.2d 649(3).

We cannot say what the evidence of plaintiff would have been had she been allowed to testify as to the operation of the car. Hence, we cannot sustain a directed verdict for failure of such proof under the circumstances here presented.

The trial court committed reversible error as herein observed, and also in directing the jury to return a verdict for the defendant. It is ordered that the judgment be reversed and the cause remanded for further proceedings.

The foregoing opinion was prepared by B. W. SIMMONS, Supernumerary Circuit Judge, and was adopted by this court as its opinion.

Reversed and remanded.

LIVINGSTON, C. J., and GOODWYN, COLEMAN and HARWOOD, JJ., concur.